NU–GRAPE BOTTLING CO. et al. v.
COMATI et al.

No. 5510.

Circuit Court of Appeals, Sixth Circuit.
April 18, 1930.

Benjamin Goodman, Jr., of Memphis, Tenn. (Wilson, Gates & Armstrong, of Memphis, Tenn., on the brief), for appellants.

F. J. Glankler and J. W. Loch, both of Memphis, Tenn. (Holmes, Canale, Loch & Glankler, Phil M. Canale, and John W. Loch, all of Memphis, Tenn., on the brief), for appellees.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

HICKS, Circuit Judge.

Try-Me Beverage & Compound Company, appellee, plaintiff below, a partnership, engaged in producing and selling syrups and flavors for use in the manufacture of soft drink beverages, on June 21, 1926, granted to Nu-Grape Bottling Company, appellant, a partnership, defendant below, a bottler and distributor of soft drinks, a franchise to bottle and distribute for twenty years certain drinks known as Try-Me Beverages. Plaintiff was the owner of the trade-mark "Try-Me" and of a design letters patent No. 64568 for a distinctive bottle. The franchise granted appellant the right to use the patented bottle and the trade-mark.[1] The remaining applicable provisions of the contract are also printed.[2] Appellee's patented bottles and

[1] "The party of the second part is hereby given and granted the right to use certain distinctive bottles and crowns adopted or to be adopted by The Try-Me Beverage & Compound Co., in the territory herein granted within this contract period, and The Try-Me Beverage & Compound Co. further agrees that there shall be a sufficient number of reputable concerns manufacturing said bottles and crowns to insure the party of the second part that he or it, to wit, the party of the second part, shall always be reasonably sure of obtaining said bottles or crowns at reasonable prices and upon reasonable notice to The Try-Me Beverage & Compound Co., the party of the first part."

"The party of the first part hereby grants to the party of the second part the right to use the trade-mark name of Try-Me on all labels and designs pertaining thereto in the territory specified in this contract and to permit party of the second part to use the name Try-Me as a part of the business of said party of the second part, but only in connection with the bottling and selling such beverages as are made from compound furnished by party of first part, Try-Me Beverage & Compound Co."

[2] "The party of the second part covenants and agrees not to use in the sale of the product known as Try-Me any crowns or bottles, which, because of imprint or blown-in trade-mark might indicate the contents of same to be other than Try-Me, and not to bottle any product in Try-Me bottles, or in other bottles under Try-Me crowns, except from flavoring furnished by party of the first part. * * *

"Upon the termination of this contract, either by expiration, mutual consent, or for cause, or upon failure of party of second part, his heirs, personal representatives, or assigns, to keep

their caps or crowns both bore the trade-mark "Try-Me." Appellant purchased 200 gross of Try-Me bottles at a price of $1,850 and proceeded under the franchise until on October 1st appellee complained by ·letters that appellant was using Try-Me crowns on bottles other than Try-Me bottles and was using Try-Me bottles for other than Try-Me beverages, and further that appellant was manufacturing an inferior product. On October 2d appellee replied and admitted that it had had some· trouble in maintaining the quality of its drinks, but advised that it thought this trouble had been overcome. This letter contained no intimation that appellant intended to abandon the franchise. However, on October 5th, appellant wrote:

" * * * Gentlemen:

"Wish to advise we have decided to discontinue bottling your line of beverages, and will thank you to advise us if we may expect you to take all Tryme bottles off our hands.

"It will take us some little time to gather up all our bottles, but we hope to have them in hand not later than December 1, 1926, at which time we would like to have your disposition of same.

"Kindly advise us by return mail if we may expect you to relieve us of our bottles bearing your trade-mark, and with best wishes, we are. * * * "

The material part of appellee's reply, dated October 7th, is as follows:

" * * * Then later on in June you wrote to know if you could get the territory and we wrote you and told you that we would not enter into a franchise until you had ex-

---

and perform any of the stipulations, agreements, or obligations, which the party of the second part herein agrees to be kept and performed, then all the rights and privileges herein granted to party of the second part in 'said territory, and all right hereunder, shall cease and terminate, and the party of the second part, his· or its personal representatives, heirs and assigns, shall immediately cease the use of Try-Me bottles and of the name 'Try-Me' in any manner whatsoever, and shall cease to operate any plant or plants, or to conduct any business under the name. * * *

"In case of the termination of this contract under any of the provisions contained herein, or for any other reasons by either party to same, the party of the second part shall, on request of the party of the first part, and upon payment of the reasonable market value thereof, turn over and deliver to the party of the first part, its representatives or agents, all matters and things bearing trade-mark or trade-name of the parties of the first part."

ercised and proved your good faith to us by purchasing bottles, then you purchased same and we entered into a contract. Still later on you started bottling 'Try-Me' and you violated your contract by using 'Try-Me' crowns on small bottles and on beverages· made from extracts by other manufacturers and after you found that we would not stand for this kind of stuff it seems that you now feel that you will further make us the goat in: the matter. * * *

"We now therefore request that you comply strictly with the terms of the 'Try-Me' franchise in respect to the use of 'Try-Me' bottles and 'Try-Me' crowns and that you do not put any beverage made by other manufacturers in these bottles or under 'Try-Me' crowns and should we have an opportunity to close a franchise with some other party in: your territory we will be very glad to effect an arrangement between you and such party that will enable them to handle your 'Try-Me' bottles. Outside of this we will not make any special effort for you under a circumstance of this kind."

On October 13th appellant wrote:

" * * * Yours of the 7th is received and in reply to same will say that it is not our idea or intention to argue this matter as we have fully made up our mind to discontinue your line and what we want to know is whether or not you want to protect your bottles by relieving us of them; if so we have nothing further to add to our former letter, on the other hand if you do not take these bottles up and reimburse us for them, then it will be up to us to do with them as we deem: proper"—

to which on October· 14th appellee replied:

" * * * We have your favor of October 13, and we beg to advise that we have never agreed to take up your bottles and we do not expect to. Our letters of previous date covers these matters thoroughly in every respect and we had no idea but that your mind was thoroughly made up from the very beginning. We are only interested in the use of this bottle and we have previously given you notice that same was patented and would be thoroughly protected and that is all we have to say. * * * "

On October 26th appellant again wrote:

" * * * Unless you advise us concerning the taking up of these bottles and paying us the market price for same, then we will act from your letter of the 7th instant, and use these bottles for bottling any other soda-water we handle, as we paid our money for

these bottles and unless you want to take them up and pay us for same, then we expect to use them.

"We want your letter of instructions as to what disposition you want us to make of these Tryme Bottles; but at the same time you must understand that under any circumstances the instructions you give us must incorporate sufficient time to enable us to get these bottles in from the trade, ready for delivery to you * * * "

to which, on October 28th, appellee replied:

" * * * In reply to yours of October 26, we beg to advise that our previous letters thoroughly cover all we have to say. * * * "

This closed the correspondence. It was not only proven but admitted that shortly thereafter appellant did begin to use the Try-Me bottles for bottling beverages other than Try-Me beverages, although appellant maintains that it advised its customers that the beverages therein were not Try-Me beverages. Thereupon the original bill was filed.

As a result of the litigation a permanent injunction was granted prohibiting appellant's infringement of appellee's trade-mark and the use of appellee's patented bottle and the further use by appellant of Try-Me crowns and bottles in the sale and distribution of beverages other than Try-Me beverages.

Appellant does not contend that injunctive relief was not justified, but it asserts that such relief should be conditioned upon the purchase by appellee of appellant's Try-Me bottles then on hand. This presents the only question.

■ Appellant bases its contention upon the maxim "He who seeks equity must do equity." We find no support for the application of this maxim to the conduct of appellee. The contract was of appellant's own seeking. There appears to have been nothing unconscionable in its execution. No sufficient excuse is advanced for its abandonment. Appellee sought only the faithful performance of it. To require appellee to purchase these bottles as a prerequisite to relief would be to grant affirmative relief to appellant after a specific finding by the judge that appellant had infringed appellee's trade-mark and design patent and had engaged in unfair competition. No equitable principle justifies the proposition. "He who seeks equity must do equity" is as appropriate to the conduct of a defendant as to a plaintiff. Brown v. Lake Superior Iron Co., 134 U. S. 530, 535, 10 S.

Ct. 604, 33 L. Ed. 1021; Fullman v. Steel City Elec. Co., 2 F.(2d) 4, 6 (C. C. A. 3).

However, appellant's insurmountable obstacle is found in the consideration of its contract rights. The intention of the contract, clearly expressed, is that upon its termination appellant shall deliver the bottles to appellee *on its request and upon payment of their value.* It places no hard and fast obligation upon appellee to take them. It does nothing further than create an option in appellee's favor. This specific condition excludes any other, and to require appellee to otherwise take and pay for the bottles would in effect write a contract for the parties which they had not agreed to. Equity will not do this. Equity follows the law.

"Where a rule, either·of the common or of the statute law, is direct, and governs the case with all its circumstances, or the particular point, a court of equity is as much bound by it as a court of law, and can as little justify a departure from it." Story's Eq. Jurispr. (11th Ed.) vol. 1, § 64. Also, Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, § 425; Hedges v. Dixon County, 150 U. S. 182, 192, 14 S. Ct. 71, 37 L. Ed. 1044; Magniac et al. v. Thomson, 15 How. (56 U. S.) 281, 299, 14 L. Ed. 696.

■ The contract provision is plain, the legal rights of the parties are clearly established by it, and equity is powerless to strike it down upon any such consideration as that perchance there may be some hardship in the execution of it. City of La Follette v. Lafollette Water, L. & Tel. Co., 252 F. 762, 768 (C. C. A. 6).

The decree of the District Court is affirmed.