[Civ. No. 7369.  First Appellate District, Division One.—October 14, 1930.]

## SACRAMENTO BOX & LUMBER COMPANY, Appellant, v. ROSENBERG BROS. & COMPANY, Respondent.

A. B. Reynolds and S. H. Jones for Appellant.

Bacigalupi, Elkus & Salinger for Respondent.

TYLER, P. J.—Action to recover the sum of $5,302.68 for certain box shooks alleged to have been sold and delivered by plaintiff to defendant.  The complaint is in two counts, the first being for the reasonable value of the goods alleged to have been sold and delivered and the second setting forth an express contract to pay the sum as the purchase price.

Trial was had and the court found that plaintiff did not sell or deliver to defendant the merchandise in question and that it did not agree to pay for the same.  It is here claimed as ground for reversal of the judgment that the findings of the trial court are not supported by the evidence.  There

is no merit in the contention as the record contains ample evidence to show that there was no contract, either express or implied, between the parties.

There is little dispute between the parties as to the principal facts established by the evidence. So much of it as supports the findings may be briefly summarized as follows: In May, 1928, defendant entered into an agreement with one Omer Denny, who was engaged in the business of dealing in and manufacturing box shook as White Pine Products Company, a corporation, by which the latter agreed to deliver to defendant Rosenberg Bros. & Company two million board feet of box shook at a price of $37.50 per thousand feet. In November of the same year all of this lumber, except about five carloads had been delivered and defendant was insisting that delivery be made of the balance. Not being in a position to perform the contract, Denny telephoned to Sacramento Box & Lumber Company, plaintiff herein, to ascertain if it would accept an order for three cars of box shook to help fill Denny's contract with defendant. Terms were discussed and a price was agreed upon at $39 per thousand feet. The president of plaintiff corporation expressed a preference to bill the lumber direct to defendant as he was uncertain whether he desired to invoice the White Pine Products Company and accept that credit. Denny informed him that he thought this would be satisfactory, but he would have to confer with defendant to confirm such arrangement. Without consulting defendant in the premises, Denny concluded that the matter would be agreeable to it, and he telephoned plaintiff that the plan was satisfactory. Plaintiff never attempted to have defendant confirm this arrangement. Denny thereafter forwarded plaintiff a written order for two cars of shooks. This order was from White Pine Products Company to plaintiff and it directed the merchandise to be delivered and invoiced to defendant. Subsequently three other carloads were ordered by Denny under the same directions. All five cars were at different times shipped by plaintiff. In each car, nailed on the inside of the door, was a manifest on the billhead of plaintiff, Sacramento Box & Lumber Company, which stated that the merchandise was sold and shipped to Rosenberg Bros. & Company for its account. Plaintiff also mailed to defendant a duplicate copy of the manifest of each car,

original bills of lading and invoices. On receipt of the invoices of the first shipment, the purchasing agent of defendant company discovering that the merchandise had been. billed to his company by plaintiff, immediately took the matter up with Denny and expressed dissatisfaction with the method of the shipment, stating to Denny that he objected to having the merchandise charged by plaintiff to defendant company as he had never dealt with that company. Before Denny placed the order with plaintiff he was indebted to defendant company in the sum of $5,000, as that sum had been advanced to him under his contract. Denny at this time stated to defendant's agent that the whole matter was a mistake as the merchandise should have been billed to his company and he promised to take the matter up with plaintiff and rebill defendant for the same. The invoices were turned over to Denny, who thereafter sent defendant other invoices on his own billheads covering the shipments. There is evidence to show that Denny acquainted plaintiff with this fact, and the latter did not protest but merely expressed the thought that it wished to be sure of payment. After all the shipments had been made, defendant settled in full with Denny. Thereafter, plaintiff from time to time demanded payment from Denny and referred to the fact that he had been paid in full for the lumber. Denny promised to make payment, but the promise not being fulfilled, plaintiff brought an action against the White Pine Products Company, through which Denny did business, to recover for goods sold and delivered to it. About this time the White Plains Products Company became insolvent and · an involuntary petition in bankruptcy was instituted against it, plaintiff being a petitioning creditor. In its verified petition, plaintiff herein alleged that the White Pine Products Company was indebted to it for the very lumber which forms the subject of this controversy.

██ Under these facts there is no reasonable ground for claiming that defendant was liable to plaintiff on implied *assumpsit*. Defendant did nothing which could possibly be construed as an implied ratification of the purchase which Denny attempted to make on its behalf. Defendant had the right to select and determine with whom it would contract and could not have another thrust upon it without its consent. As soon as it became familiar with the transaction

between Denny and plaintiff, it repudiated the entire matter. Under the facts as narrated, no contract, either express or implied, existed between the parties. They show that plaintiff invoiced and charged to defendant merchandise without inquiring whether or not the arrangement between Denny and plaintiff would be satisfactory to it. When defendant learned of the arrangement it immediately repudiated the same and received and accepted the goods under the justified belief that plaintiff was merely supplying them at the instance of the White Pine Products Company, and that plaintiff would look to that company for payment. There was no express contract between plaintiff and defendant, nor do the conduct and dealings of the parties show in any manner that the defendant impliedly assented to any contract whatever with the plaintiff. On the contrary, the evidence shows that it wanted nothing to do with the arrangement between Denny and plaintiff for obvious reasons, and plaintiff was so notified. Counsel have favored us with many authorities upon the subject of what facts do or do not raise an implied contract. A discussion of these cases would answer no useful purpose. Suffice it to say that, as in the case of other contracts, a contract of sale may or may not be implied from facts and circumstances. Here there are facts which negative any obligation on the part of defendant to pay. ■ The rule is elementary that a person has a right to select and determine with whom he will contract, and he cannot have another thrust on him without his consent.

Respondent raises the further question that the proceedings brought by plaintiff against the White Pine Products Company constitute an election of remedies which precludes plaintiff from now asserting its claim against defendant. Considering the conclusion we have reached, a discussion and determination of this question becomes unnecessary. It may be said, however, that the circumstance affords strong evidence that plaintiff intended to sell the merchandise to White Pine Products Company and not to the defendant.

The judgment is affirmed.

Knight, J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal November 13, 1930, and a peti-

tion by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 11, 1930.