[L. A. No. 16134. In Bank.—September 3, 1940.]

HOLLYWOOD MOTION PICTURE EQUIPMENT CO., LTD. (a Corporation), Appellant, v. A. J. FURER, Respondent.

Henry O. Wackerbarth for Appellant.

William Jennings Bryan, Jr., and Harry C. Cogen for Respondent.

MOORE, J., *pro tem.*—The trial court having sustained an objection to the introduction of any evidence in support of the complaint on the ground that it failed to state a cause of action, and having entered judgment in favor of defendant on his counterclaim in the sum of $822.75, plaintiff appeals.

The complaint alleges that in 1931 and 1932 plaintiff invented, developed and improved a bomb microphone and certain other devices for use in sound recording and light testing; that for the purpose of manufacturing such devices for sale, plaintiff caused wooden patterns of said inventions to be made for use in making forms from which finished castings were to be wrought; that in December of 1932, while defendant was operating a machine shop, plaintiff delivered the patterns to defendant in order to have the latter make some finished castings in metal for use in assembling devices; that said patterns remained with defendant until June 29, 1935, during which period plaintiff caused defendant to manufacture and finish said castings therefrom for $25 per set; that at the time of the delivery it was orally agreed that "immediately prior to the time that plaintiff first delivered said patterns to defendants and as a condition precedent thereto, said defendants . . . would only make therefrom such castings as were ordered by plaintiff, and that *they would not make any castings therefrom* other than those ordered by the plaintiff"; that while plaintiff was selling his castings to the retail trade for $100 per set, defendant manufactured castings from said patterns, and by circular letters offered to sell and did sell those castings, at prices less than that received by plaintiff; that, as a result of said acts of defendants, plaintiff was damaged in the sum of $5,000, a sum expended by plaintiff in advertising his devices. The court was asked to enjoin defendant from selling such castings and to require defendant to account for profits made upon sales of castings and to pay damages in the sum of $5,000.

(I) The argument that the complaint does not state a cause of action is grounded upon the claim that the promise of defendant that he would not make any castings from said patterns other than those ordered by plaintiff was an oral promise, and that it is invalid under section 1624 of the Civil Code because the promise "by its terms is not to be performed within a year from the making thereof". Since there is no phraseology in the agreement which declares that

it is not to be performed within a year, and since no period of time is mentioned in the agreement, defendant, in order to invoke said statute, interpolates an implication that his promise "not to make any castings" should be followed by *"at any time"* or he contends that the infinitive phrase means that he would never make the castings for others. If given such construction defendant urges that the contract is one to desist from doing a thing, with no time limit upon the act of desisting, and, therefore, is one of such a nature that it must require more than a year for performance. In support of such contention defendant cites *Long* v. *Cramer Meat Packing Co.*, 155 Cal. 402 [101 Pac. 297], wherein this court held that the agreement that "under no circumstances would any sheep be allowed to range, graze, pasture or water" upon their ranch was not enforceable because by its nature it was not to be performed within a year and therefore was void. But that case does not control in the interpretation of the contract at bar. The predecessors of those parties owning neighboring lands by oral agreement joined in a venture as tenants in common to acquire certain detached parcels of land so that they "could control the waters thereon and protect and secure for themselves the use and benefit of the surrounding ranges . . . and prevent sheep from grazing upon said ranges . . . and that the same should and would *always* be used for the purpose of grazing, ranging and pasturing and watering the horses and cattle of the respective parties and their successors . . . *and that under no circumstances would any sheep ever be allowed to* range, graze, pasture or water upon said land or any part thereof so far as the same could be prevented by said Charles Cramer". In view of the italicized words, this language clearly contemplated a period of time in excess of a year. Even the plaintiff there contended that "the agreement was to go right along indefinitely; no time was fixed for its termination".

When plaintiff left its patterns with defendant for him to manufacture the devices not a word in their oral agreement indicated an intention that defendant was to make castings always or over any definite period of time. Defendant agreed "not to make any castings therefrom other than those ordered by the plaintiff". Plaintiff might have ordered and received all castings it desired within six months. This would have terminated their relations. By no term or construction

of the contract was plaintiff obligated to order castings made or to leave the patterns with defendant after the expiration of a year. Whatever number of castings contemplated would not necessarily determine that the period of performance was to be longer than a year.

Nothing was to be done or "refrained from" by defendant that could not have been performed or refrained from within a year. To say that because plaintiff did not specify any time during which defendant should "not make any castings" means that he should never do so, is to read into the agreement something which is not there. ■ It is well settled that oral contracts invalidated by the statute because not to be performed within a year include those only which *cannot* be performed within that period. (2 Williston on Contracts, Revised Edition, sec. 495, p. 1441.) Even though a promise may not by its terms be performed within a year, yet it is not inhibited by the statute if there is a possibility that it may be. The contract itself must contain language whose reasonable interpretation shows a clear intention that it cannot be performed within the year. It is subject of proof unless by its terms it is incapable of performance within said period. In *Dougherty* v. *Rosenberg*, 62 Cal. 32, plaintiff had promised "altogether to forbear" to bring suit to foreclose a lien until he had obtained final judgments against certain third parties, events which might occur within the year. It was held that an agreement to refrain altogether for an indefinite time is not within the operation of the statute. In *Mayborne* v. *Citizens Trust & Sav. Bank,* 46 Cal. App. 178 [188 Pac. 1034], plaintiff recovered judgment for the value of personal services rendered decedent Dutton over a period of more than twenty years. Referring to defendant's contention that the oral contract of plaintiff and decedent was invalid because it was "not to be performed within a year from the making thereof", the court said, "This rule does not apply to contracts, either express or implied, for the rendition of services for an indefinite period of time and payment to be made at the termination of the relationship. (Citing cases.) To fall within the condemnation of the statute the contract must be such as to be incapable of performance within one year."

In view of the language of said section 1624 of the Civil Code and of the foregoing authorities, we see no escape from the conclusion that the court erred in holding that the contract

sued upon herein was invalid as being in violation of said section 1624. (*Dutton D. Co.* v. *United States F. & G. Co.*, 136 Cal. App. 574 [29 Pac. (2d) 316].) To apply the statute under the circumstances of this case would operate as a fraud upon plaintiff.

■ (II) A further ground urged to establish the insufficiency of the complaint is that the complaint does not allege that plaintiff's invention was a secret invention or allege facts from which such secrecy can be determined. Said statement is true but upon the facts alleged plaintiff is not required to rely upon the secrecy of its invention. We have here a relationship created by a contract where the manufacturer took into his custody certain patterns created by the inventor for the purpose of manufacturing castings from them for the inventor. Defendant did not acknowledge the dominance of a fundamental precept of honesty and fair dealing, enjoined by the Decalogue and supported by prevailing moral concepts. "Thou shalt not steal" applies with equal force and propriety to the industrialist of a complex civilization as to the simple herdsman of ancient Israel. ■ Where a bailee of an article has accepted it under definite terms to hold it and to use it for the benefit of the bailor, a confidence has been reposed which should remain inviolate. The mere fact that the ingenious principle materialized in the thing bailed may be known to all the world would not depreciate the sanctity of the contract between the bailor and the bailee. When a former employee of the Dupont Fabrikoid Company undertook to manufacture leather by use of alleged secret processes learned while in the company's employ, it was held that "a starting point is not property or due process of law but that the defendant stood in confidential relations with the plaintiffs or one of them". Continuing, Justice Holmes said: "Whether the plaintiffs have any valuable secret or not, the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be. . . . The first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations. If there is any disadvantage in the fact that he knew the plaintiffs' secrets, he must take the burden with the good." (*E. I. Du Pont De Nemours Powder Co.* v. *Masland*, 244 U. S. 100 [37 Sup. Ct. 575, 61 L. Ed.

1016].) While the inventor of any product of the mind may forfeit his ownership thereof when it becomes known to the public (Civ. Code, sec. 980), yet such forfeiture does not deprive the author of his right to make contracts with reference to his product. Neither does he yield his right to have such contracts protected by the courts where a confidential relationship has been created on the basis of the inventor's secret. (*Hamilton Mfg. Co.* v. *Tubbs Mfg. Co.*, 217 Fed. 401, 407.)

In the case before us, defendant agreed not to use the specific patterns committed to his care for making castings for others than plaintiff. He became bailee of the patterns and his use of them to the detriment of plaintiff was a conversion of them. "If a bailee, having no authority to use the thing bailed, uses it, or having authority to use it in a particular way, uses it in a different way, unauthorized by the terms of the bailment or to a greater extent than authorized . . . such unauthorized use constitutes a conversion of the chattel, rendering the bailee liable even for the loss or damage which due care could not have prevented." (8 Cor. Jur. Secundum, pp. 283, 284.)

When plaintiff committed its patterns to defendant for a specified use for the mutual profit of both parties, it was incumbent upon defendant to preserve them for the purpose declared in the bailment and not to apply them to his own uses. It follows that, even though plaintiffs alleged inventions were of the public domain, the complaint has stated a cause of action by alleging the appropriation of the use by defendant of plaintiff's said patterns to the detriment of plaintiff as alleged.

The judgment is reversed.

Carter, J., Shenk, J., Gibson, C. J., Spence, J., *pro tem.*, and Curtis, J., concurred.

Edmonds, J., concurred in the judgment.