[Civ. No. 11262.   First Appellate District, Division Two.—October 8, 1940.]

LUIS FATJO et al., Appellants, v. FRANK O'CONNELL et al., Respondents.

Sullivan, Roche & Johnson for Appellants.

Maurice J. Rankin and C. C. Coolidge for Respondents.

NOURSE, P. J.—The plaintiffs appeal from a judgment adverse to them in a suit involving rentals under a lease tried before the court without a jury.

The lease in question was executed on June 1, 1936, for a term of five years commencing November 1, 1936, covering approximately 45,000 acres of land used for the pasturing of cattle. It called for a minimum annual rental of $32,000 with a stipulation for additional payment by the lessee in the event that the average sales price for any one year of "good grade grass slaughter steer cattle (900–1100 lbs.)" exceeded six cents per pound.

The controversy between the parties centers on the average sale price of such cattle in the years 1937 and 1938, the plaintiffs alleging that such price was 9.48 cents per pound for the year 1937 and 8.171 cents per pound for the year 1938. The defendants, on the other hand, contend that the average sales price of such cattle was not in excess of 8.545 cents per pound for the year 1937 and not in excess of 7.03 cents per pound for the year 1938. On the basis of what the defendants then believed these factors to be they paid for the year 1937 in excess of the $32,000 stipulated rent the sum of $4,320, and on the same basis they paid for the year 1938 an additional rental of $1,875. They now claim that they paid too much. The plaintiffs disputed both of these items and upon the basis of their estimate of the average sales price of such cattle claimed the sum of $900 to be due in excess of the additional sum paid by the defendants for the year 1937, and the sum of $1,381.50 in addition to the sum paid by the defendants for the year 1938. Plaintiffs brought the action to recover these two additional sums, and the defendants filed a cross-complaint to recover what they claimed they had over-paid on account of rentals for these two years.

The lease provided that for the purpose of determining the average sales price of such "good grade grass slaughter steer cattle (900–1100 lbs.) for any of said years, the records of the Federal State Market News Service as published in the daily livestock market summary of the United States Department of Agriculture issued at San Francisco shall be used, taking the average daily sales at South San Francisco Market for good grade grass slaughter steer cattle (900–1100 lbs.) for the months of May, June, July, and August of each of such years". A specimen copy of one of such market summaries was attached to the lease and identified by appropriate markings showing the sales price of such cattle for the particular day for which the summary was issued. The lease then provided: "In the event that the above market service is not available then the parties of the first part shall have the right to use the records taken from the books of the sellers and buyers of slaughter steer cattle sold from said ranch during the months of May, June, July and August of each of such years."

The plaintiffs introduced in evidence the printed daily market livestock summary issued at San Francisco for the months of May, June, July, and August of the years 1937 and 1938. The defendants introduced in evidence sales books and records showing sales of cattle from the demised premises for the same months. The printed summaries offered by the plaintiffs show only thirty-nine quotations for the year 1937—twenty in the month of May, nineteen in the month of June and none in July or August. They show only sixteen quotations in the year 1938—fifteen in May, none in June, one in July and none in August. The sales books and records of buyers and sellers of cattle from the demised premises offered in evidence by the defendants show sales of grades of cattle many of which were not in contemplation of the lease.

Upon this evidence the trial court found that the plaintiffs had failed to prove a case for any recovery under their complaint, and that the defendants had failed to prove a case for any recovery under their cross-complaint. In appealing from this judgment the plaintiffs ask us for a reversal upon the grounds that the trial court misconstrued the lease "as to permit reference to data other than such quotations for the purpose of determining such average price". We do not understand that such question is of any importance

on this appeal. There is nothing here but the simple question whether, when the trial court finds upon conflicting evidence that the plaintiffs have failed to prove the allegations of their complaint, the appellate court will substitute its own judgment and make a contrary finding. Here the terms of the lease are plain and call for no intricate interpretation. The parties agreed that the additional rentals would be paid on the basis of an increased average sales price of such cattle ''for any of said years''. To determine this factor they agreed that the average sales ''for the months of May, June, July and August of each of such years'' should be the basis of computation. They did not agree that the average sales shown for any one or any two or any three of the four months named should be accepted as determining the average sales ''price'' for the entire year. To avoid the possibiliity that the market summaries which had been taken for the purpose of determining this average price might be incomplete, they expressly provided that if such ''market service is not available'' then the parties might use the records of the sellers and buyers of such cattle from the demised premises. Now such service would become unavailable, if the plaintiffs were unable to procure printed copies of the reports, or if the service suspended publication altogether, or if the printed summaries failed to contain entries regarding the grade of cattle specified in the lease. ██ The trial court properly concluded that the market service became unavailable because of the latter contingency, and therefore admitted evidence of sales from the demised premises. There was no error in admitting these records in evidence in the first instance since the parties stipulated that ''these records taken from the books of the sellers and buyers of slaughter steer cattle sold from said ranch'' should be resorted to for the purpose of determining the average sales price for any one year of the grade of cattle mentioned in the lease. ██ It may be that some of the entries in some of these records relating to the sale of cattle of a grade other than that covered by the lease were not pertinent to the issues involved, but if so this evidence was not prejudicial to the appellants' case as no recovery was allowed to the respondents on the basis of these sales. It should be borne in mind that the trial court was confronted with the problem of determining the average sales price throughout the year for the particular grade of cattle mentioned in the lease; that for this purpose it sought to

find the average sales price for such cattle for the months of May, June, July and August as indicative of the average sales price throughout the year; that if the market reports did not show this fact, the court was to resort to the records of the sales off the ranch during a similar period. In this respect the able trial judge filed with the judgment above noted a written opinion detailing the difficulties arising from the want of competent and substantial proof. A portion of that opinion we quote with our full approval:

''The average sales price throughout the year of these good grade grass slaughter steer cattle (900–1100 lbs.) by the terms of the lease, as above noted, may be established by showing the average sales price through the months of May, June, July and August of such years. This is so because the contracting parties agreed to this. But the contracting parties did not agree that the average sales price of such cattle throughout the year should be determined by the average sales price for the months of May and June only of one year, nor of the months of May and July only of one year; and this is all that the plaintiffs have attempted to prove, even if full effect were given to all of the market reports claimed to show any such sales.

''But the proof of the plaintiffs is, in fact, much less than that; for an examination of the reports for the thirty-nine days in 1937 and the sixteen days in 1938, which they offer for that purpose, shows that the majority of the quotations relied upon were not for sales of grass cattle. The other quotation for July of 1938 was for a load of 'fed cattle', and, apparently, no grass cattle were sold that day of any kind. Therefore, the plaintiffs' proof for the year 1938 would be limited to fifteen sales during the month of May only, with no sales shown for three-fourths of the period. The court made some attempt to check up the separate reports for the several years relied upon by the plaintiffs, to ascertain how many of those reports would show any actual sales of good grade grass slaughter steer cattle (900–1100 lbs.); and the data supplied by these market reports was so vague as to afford satisfactory evidence of such sales on only a very few days—not enough, indeed, to be statistically significant.

''The Court made an effort to reach some conclusion as to what was the average sales price upon which to base the rental value under all of the terms of this lease, and it

has been unable to do so from the evidence introduced before it. There seems to be but one solution to the problem and that is on the principle that the burden of proof rests upon the plaintiffs. It is the duty of the plaintiffs to show by a preponderance of evidence that there is rental due under the lease, and unpaid. It is conceded that the minimum rental of thirty-two thousand dollars ($32,000.00) per annum has been fully paid. The plaintiffs contend that the basic price of cattle for the two years in question exceeded the sum of six cents (6c) per pound. They have not proven that alleged fact to the satisfaction of the court.

"On the other hand, it is admitted that the defendants have paid considerable additional sums as rental over the minimum price of thirty-two thousand dollars ($32,000.00) during each year. ▪ It is their contention that they have paid in excess of the amount due. Upon that basis they have asked for affirmative relief in the return of such alleged excess payments. They have failed to convince the court that they have paid in excess of what was due. In any event, it would appear to the court that such payment was a voluntary payment, being made in possession of full knowledge of all the facts and, accordingly, they are not entitled to recover. And because the plaintiffs have failed to prove their case by a preponderance of the evidence, or by evidence satisfactory to the court, they are not entitled to recover."

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 7, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 5, 1940. Carter, J., voted for a hearing.