[Civ. No. 17226. Second Dist., Div. Two. Oct. 17, 1950.]

HARRY J. SKETCHLEY, Plaintiff and Appellant, v. SAM P. LIPKIN et al., Defendants and Appellants.

Reynolds, Painter & Cherniss and Louis Miller for Plaintiff and Appellant.

Harry G. Sadicoff for Defendants and Appellants.

MOORE, P. J.—Both parties have appealed from a decree enjoining defendants from exercising any right over a certain machine invented by plaintiff or from keeping, using or alienating the novel features or ·parts thereof on condition that plaintiff pay defendant Lipkin moneys assertedly invested by him in the construction of such machine.

For about 12 years preceding 1947, in connection with his plumbing business, plaintiff was engaged in inventing, constructing, and perfecting a machine for cleaning sewers and other subterranean conduits. While he had through the years discussed his device with his son-in-law, defendant Lipkin, it was not until 1947 that the latter became so interested in the device that he negotiated to acquire an interest. In July, 1947, they orally agreed that a corporation should be organized to own and exploit the invention; its stock to be divided on the basis of 51 per cent to Lipkin and 49 per cent to plaintiff; no dividends to be paid until plaintiff should be reimbursed in the sum of $25,000 for his expenses in developing the machine; both to receive salaries in the same amount; Lipkin to invest $25,000 and further to finance the corporation by the sale of its nonvoting shares to the extent of $250,000; Lipkin to handle sales and promotions, plaintiff to supervise construction and direct the use and operation of the machines fabricated by the corporation; exclusive rights to the exploitation of the machines in Washington, Oregon and

California to be reserved by plaintiff—all such covenants and stipulations to be embodied in a writing by Lipkin's attorney.

A second meeting of the parties assembled in mid-August for the purpose of executing the contract. The attorney presented a writing he had prepared for the signatures of plaintiff and Lipkin. Plaintiff and his son promptly pointed out that the document contained no provisions for equality of salaries of Lipkin and plaintiff, for Lipkin's investment of $25,000 or for his financing the company in the sum of $250,-000, for plaintiff's reservation of exclusive territorial rights, for the division of the stock between plaintiff and Lipkin on the basis of 49 and 51 per cent respectively. When plaintiff refused to sign the writing, Lipkin promised plaintiff that a new draft of the agreement would contain the omitted provisions. Thereupon the attorney caused plaintiff and his son "Bud" to execute a power of attorney as a necessary instrument to be used in effecting the proposed corporation. Pursuant thereto, the attorney caused to be organized in Nevada the Underground Power Equipment Corporation of America. While the "dummy" organizers authorized the issuance of the corporate shares to plaintiff and his son and to Lipkin and his two associates, Roberts and Mendes, no application was made to the Corporation Commissioner of California for a permit to issue securities. Without closing the negotiations for the written contract required, Lipkin occupied plaintiff's shop and offices and put Mendes to work in a machine shop supervising a new construction herein referred to as the "underground machine." As such work proceeded, plaintiff believed that Lipkin would cause to be produced a written contract with the terms and covenants already agreed upon. While so believing, he and his son imparted to Lipkin and Mendes their experiences in building models numbers 1 and 2, fully advised them concerning the mechanical problems to be encountered, gave them full information concerning the materials and equipment necessarily to be assembled, and furnished them with plans, drawings and specifications used in building machine number 2. The underground machine was fabricated by use of the confidential and secret information supplied Lipkin by plaintiff while the latter was relying upon Lipkin to prepare and execute the contract embodying the covenants and terms orally agreed upon. Such machine is in no material respect different from plaintiff's number 2. Lipkin's promises to prepare the written contract were con-

tinuously made for the purpose of obtaining the blueprints, plans, descriptive matter and all available confidential information from plaintiff. While Lipkin had not in the first instance made such promise with no intention of performance, he subsequently developed such intent and at all times he knew that plaintiff supplied all such confidential information solely by reason of his belief in and reliance upon Lipkin's promises.

When plaintiff refused further to deal with Lipkin without the written contract, defendants appropriated to their own use all the information supplied them by plaintiff and manu·factured one or more underground machines by the use of plaintiff's machines and drawings and the information imparted to Lipkin by plaintiff, and were about to build and sell other machines in competition with plaintiff.

Thereupon plaintiff instituted this action. Upon issue joined by a general denial and a special answer alleging (1) laches of plaintiff and (2) the expenditure by defendants of large sums of money for labor and materials in fabricating a machine, the controversy was submitted to arbitrament of the superior court. Following a trial the chancellor made findings of the facts above recited and further that (1) plaintiff cannot enjoin defendants' wrongful acts under the patent laws of the United States; (2) if they are not enjoined plaintiff will suffer irreparable injury, involving a multiplicity of actions; (3) "in good faith" the corporate defendant expended moneys and incurred indebtedness prior to November 1, 1947, in the aggregate sum of $29,532.24 "in connection with the fabrication of one or more of said machines through money supplied by defendant Sam P. Lipkin."

Upon such findings the court concluded and adjudged on December 17, 1948, that defendants are enjoined from making or transferring any machine embodying any of the ideas, principles and construction contained in or relating to the machine developed, constructed and perfected by plaintiff for cleaning sanitary sewers, drains and conduits, or from divulging to others any information obtained from plaintiff which might be necessary or useful in constructing or using such machine and ordered that immediately at the expiration of ten days after this judgment shall have become final, defendants shall surrender to plaintiff any and all machines and equipment under control of defendants purchased or manufactured by them in connection with the fabrication of the machine which is the subject of this action,

"*Upon the Condition* that plaintiff shall on or prior to January 17, 1949, deposit with the clerk of the above entitled court for the use and benefit of the defendant Sam P. Lipkin and to be paid by the clerk of the above entitled court to said Sam P. Lipkin immediately at the expiration of ten days after this judgment shall have become final, the sum of $29,532.24

"*Otherwise* judgment shall be and is that the plaintiff take nothing by his action . . ."

Both parties appealed: defendants from the entire judgment; plaintiffs from that portion which requires as a condition to the permanent injunction that plaintiff deposit with the clerk of the court for Lipkin's benefit at the expiration of ten days after the judgment has become final the sum of $29,532.24 and providing otherwise that plaintiff take nothing and defendants recover their costs.

## DEFENDANTS' CONTENTIONS

Defendants now contend:

(1) The relation of Lipkin and plaintiff was a joint venture; it should be dissolved; each partner should be paid the amount of his contributions from the joint assets; if they are insufficient to pay such indebtedness, they should be prorated.

(2) The use of a corporation to carry out the joint venture does not rob the enterprise of its partnership character.

(3) The failure of the parties to agree upon the disposition of losses does not defeat the claim of joint venture; sharing of losses follows the sharing of profits.

(4) The very difficulty of determining the nature of the contract is an additional reason for finding it was a joint venture.

(5) Dissension is a sufficient cause for dissolution. Either party may require an accounting.

## DEFENDANTS' CLAIMS WITHOUT MERIT

Each and all of the contentions of defendants proceed upon the theory that they pleaded and proved a joint venture of plaintiff and Lipkin. Not only was no such theory pleaded but it was not advanced at the trial. Except for their allegation that Lipkin invested approximately $4,000 in the business and that plaintiff allowed defendants to continue to spend money to the extent of $16,000 in developing the machine there is nothing contained in the answers of defendants that was not substantially covered by their general denial. Inasmuch as a

litigant may not advance a theory for the first time on appeal (*Martin* v. *Auerbach,* 94 Cal.App.2d 222, 226 [210 P.2d 321]; *Engleman* v. *Malchow,* 91 Cal.App.2d 341, 345 [205 P.2d 413]; *Adams* v. *Petroleum Midway Co.,* 205 Cal. 221, 225 [270 P. 668]) the points advanced by defendants are of no avail. We therefore forego a discussion of the merits of their arguments in support of a joint venture relationship otherwise than to say that the findings are completely devoid of mention of a joint venture. Defendants' pleadings were prepared, and the action was tried, by counsel other than Mr. Sadicoff. Other observations with respect thereto will occur as incidental to the treatment of plaintiff's appeal.

PLAINTIFF IS ENTITLED TO COMPLETE INJUNCTIVE RELIEF

Under the findings plaintiff is entitled to be protected in the enjoyment of his own invention. He conceived and developed the device for cleaning sanitary sewers. As a trade secret it was his property. In the confidence of the family circle he communicated his scientific knowledge to his son-in-law concerning the machine solely by reason of his reliance upon Lipkin's promise to formulate in writing all the terms of their oral agreement. The recipient of a secret process of manufacture imparted to him in confidence or to one who accepts it in consideration of an agreement to perform valuable covenants which the latter violates will be enjoined from using such secret process. (*Hollywood M. P. Equipment Co.* v. *Furer,* 16 Cal.2d 184, 188 [105 P.2d 299]; *Holley* v. *Hunt,* 13 Cal.App.2d 335, 336 [56 P.2d 1240]; 43 C.J.S. § 148, p. 752.) Thus by the cited authorities it is established that the owner of an unpatented device is by legal principles protected against the piracy of his invention because it is his own by virtue of being the original product of his mind. But the strong arm of equity reaches further. When a contractee has gained an intimate knowledge of such an invention by virtue of an agreement to use it according to specified terms and thereafter repudiates the agreement, the contractor will be awarded injunctive relief to prevent the use of such knowledge of his secret process or invention so gained from him by his contractee. (*Hollywood M. P. Equipment Co.* v. *Furer, supra.*)

In addition to plaintiff's ownership of the invention and his consequent right to an undisturbed enjoyment thereof, plaintiff's device and secret knowledge imparted in confidence to Lipkin were misappropriated. Despite this fact the judg-

ment requires plaintiff to pay Lipkin over $29,000 as a condition to complete relief and defendants now demand that at least such condition be perpetuated if no additional advantage may be gained. Adding such condition is without authority. The agreement was definite that the terms agreed upon would be reduced to writing. Not only did defendants refuse to abide by such agreement but they attempted to defeat plaintiff of his rights. They pleaded and attempted to prove that plaintiff arbitrarily refused to perform the obligations of the oral contract; that it was he who made false statements and promises to induce Lipkin into the oral contract; that Lipkin was by such statements and promises persuaded to employ an attorney and to organize the corporation and that plaintiff permitted Lipkin to expend large sums of money in improving and constructing the machine; that although plaintiff stated that the contract was agreeable and that he was willing to sign it, he conceived a plan to secure for himself the expenditure by Lipkin of huge sums and to acquire for his own use and benefit the machine as improved and developed by defendants. While such allegations were found to be false and untrue they indicate defendants' purpose to deprive plaintiff of his valuable invention. Lipkin never reduced the oral contract to writing; neither did he ever confess his error or otherwise attempt to conciliate plaintiff.

Defendants' arguments on the facts in their endeavor to induce this court to make different findings are without basis in law. On substantial evidence the court found the terms of the oral agreement and that plaintiff was guilty of no inequitable conduct. We are consequently powerless even to modify such findings. It is the function of the trial court not only to determine the weight and credibility of evidence (*Taylor* v. *Humbird*, 85 Cal.App.2d 40, 42 [191 P.2d 78]) but where there is a conflict in the evidence the trial court's finding is final. (*Seidenberg* v. *George*, 76 Cal.App.2d 306, 308 [172 P.2d 891].) ■ Also, they seek to impeach the findings by showing that the trial judge believed certain witnesses whose testimony was contrary to the decision. In this they follow a vain pursuit. Neither his written opinion nor his responsive remarks in the course of the trial are competent for such purpose. (*Buckhantz* v. *R. G. Hamilton & Co.*, 71 Cal.App.2d 777, 781 [163 P.2d 756] ; *Stone* v. *Los Angeles County Flood Control Dist.*, 81 Cal.App.2d 902, 907 [185 P.2d 396].)

### THE CONDITIONAL BASIS FOR THE INJUNCTION

Turning now to the question of the condition attached to the decree for injunction against defendants' use of plaintiff's invention—defendants assume that the maxim "who seeks equity must do equity" applies to plaintiff. Upon such assumption they contend, and evidently the trial court misconceived, that as a condition to his being awarded injunctive relief against defendants, he should restore to them the moneys they had expended in constructing the underground machine. Such reasoning involves the erroneous notion that if a wrongdoer were apprehended in the act of stealing his neighbor's herds after he had driven them 500 miles toward the market he would be liable for their restoration only on condition that the neighbor reimburse him for the amounts expended on the long journey. The answers to such contention instantly appear. It is definitely established that injunctive relief is available as a matter of right to prevent the invasion of one's property rights where he has complied with all procedural requirements. (*Meridian, Ltd.* v. *San Francisco,* 13 Cal.2d 424, 427 [90 P.2d 537, 91 P.2d 105] ; *Felsenthal* v. *Warring,* 40 Cal.App. 119, 129, 131 [180 P. 67] ; *Richards* v. *Dower,* 64 Cal. 62, 64 [28 P. 113] ; 43 C.J.S. p. 425.)

In making such contention defendants misconceive the status of an infringer. In seeking relief against one who repudiates his agreement and appropriates a novel invention the inventor is not required to sacrifice his own rights. A noble principle does not alter or remake a contract. It must be enforced according to its terms. When the inventor's rights have been violated, relief will not be denied him "unless defendant brings forward some corresponding equity growing out of the subject matter then in suit, which would . . . entitle him to a remedy against the other party . . . Where the defendant acted with full knowledge of an adverse claim, he has no equity to be protected therefrom and the maxim [who seeks equity must do equity] is inapplicable." (30 C.J.S. § 91, pp. 463, 466, 467 ; *Nu-Grape Bottling Co.* v. *Comati,* 40 F.2d 187, 189.) Peculiarly applicable to defendants' contention are the holdings in *Pacific Western Oil Co.* v. *Bern Oil Co.,* 13 Cal.2d 60, 72 [87 P.2d 1045], and *City of Los Angeles* v. *Watterson,* 8 Cal.App.2d 331 [48 P.2d 87]. In the first, the plaintiff had acquired parcel *A* which overlay an oil structure. Knowing that the petroleum pool did not extend to parcel *B,* the defendant fraudulently contracted for the right

to occupy the surface thereof in order to accomplish a secret, slant penetration of the pool beneath parcel *A* and the removal of the plaintiff's oil. It was held that such defendants were chargeable with the value of all the oil removed without any deduction for expense of recovery. In the Watterson case it was held that equity will not permit its rules to be made instruments of injustice. The city was not required to restore the sum of money paid upon the purchase of the bonds as a condition of cancelling defendant's fraudulent acquisition thereof. More appropriate to the facts here involved is the maxim "he that hath committed iniquity shall not have equity." (See *Goble* v. *O'Connor*, 43 Neb. 49 [61 N.W. 131, 134].)

Not only should plaintiff's property rights be protected by injunction because they are his own but under the findings Lipkin became a trustee and as such was obligated to preserve for plaintiff all that had been entrusted to him. If he had expended moneys to defend the invention they would be recoverable but for sums disbursed by the trustee in his efforts to cheat plaintiff and gain ownership of the invention to the exclusion of plaintiff, he has no right to a judgment. The right to be reimbursed for expenses incurred in preserving trust property is intended for honest trustees. Recovery is limited to expenses of a trustee "properly incurred in the performance of his trust." (Civ. Code, § 2273.) No part of the $29,000 claimed was productive of actual benefit to plaintiff. The machine built by defendants was in all essential respects a replica of plaintiff's number 2. One who becomes an involuntary trustee through his own fault has no right to reimbursement as provided by the cited code section. The principle is illustrated in adjudicated cases. A disloyal attorney had in the course of his employment acquired certain tax titles on the plaintiff's property. He had not done so on her orders or for her benefit, but to gain for himself. He was a volunteer and acted secretly against his client and therefore became an involuntary trustee through his own fault. He was not entitled to reimbursement for his outlay as a condition to the decree quieting title against him. (*McArthur* v. *Goodwin*, 173 Cal. 499, 504 [160 P. 679].) The maxim is applicable to a trustee only when he has conducted the affairs of his trust honestly, dealt fairly and made no attempt to make a secret profit for himself. (*Kinert* v. *Wright*, 81 Cal.App.2d 919, 927 [185 P.2d 364]; *East Tennessee & Western North*

*Carolina Ry. Co.* v. *Robinson,* 19 Tenn.App. 265 [86 S.W.2d 433, 439].)

Furthermore, defendants ignored the oral agreement Lipkin had made with plaintiff. By reason of their wilful breach of the contract upon which plaintiff relied in disclosing his secret processes and methods defendants are in no position to recover disbursements. Equity follows the law. The rights of plaintiff being determined by law, the chancellor was without authority to grant what the law denies. (*DeMattos* v. *McGovern,* 25 Cal.App.2d 429, 432 [77 P.2d 522].) Having wrongfully breached their contract they have no right to demand of equity that it grant their claims. (*Gavina* v. *Smith,* 25 Cal.2d 501, 506 [154 P.2d 681]; 10 Cal.Jur., p. 516.)

It was found not only that Lipkin represented that he would prepare a written agreement to include the terms specified but that his representations "were originally and continuously made for the purpose of obtaining from plaintiff the confidential information relating to said machine . . . that such confidential information . . . was obtained by said defendants with the knowledge of the fact that plaintiff would not have supplied such information to said defendants except under the belief and understanding by plaintiff that the oral understandings of the parties would be reduced to writing and executed by the parties." In the light of such finding there is no basis for an arbitrary requirement that plaintiff pay a huge sum of money as a condition for being protected by injunction in the enjoyment of his property. (*Dawson County Irrigation Co.* v. *Stuart,* 142 Neb. 428 [6 N.W.2d 602].) Having accepted the confidence reposed in him by plaintiff, Lipkin became a constructive trustee and was under obligation to refrain from abusing such confidence by obtaining an advantage to himself at the expense of plaintiff. (*Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561, 576 [126 P. 351, 42 L.R.A.N.S. 125]; *Brison* v. *Brison,* 75 Cal. 525, 528 [17 P. 689, 7 Am.St.Rep. 189].) His violation of the oral promise to reduce the agreement to writing was a fraud against the plaintiff and from it a trust arose in favor of the latter. Therefore, his hands are unclean and he can take no advantage of his own wrong. Equity does not aid him who has breached his agreement.

Having convicted Lipkin of his fraud the trial judge substituted compassion for equity and made a decree that would exempt such defendant from any penalty whatsoever, and in addition thereto apparently allowed him liberal compensa-

tion for his time and for that of his associates. The amount of moneys awarded defendants is $16,632.24 in excess of the cost to plaintiff in constructing his number 2. Such a penalty as a prerequisite to the granting of an injunction against one who has voluntarily undertaken to do what he is not bound to do is wholly unauthorized. Voluntary payments cannot be recovered. (*McMillan* v. *O'Brien*, 219 Cal. 775, 780 [29 P.2d 183]; *Leahy* v. *Warden*, 163 Cal. 178, 181 [124 P. 825]; *Schwarz* v. *Hatch*, 45 Cal.App.2d 510, 518, 519 [114 P.2d 677]; *Fatjo* v. *O'Connell*, 41 Cal.App.2d 64, 69 [105 P.2d 1036].) Especially is this true of one who is guilty of tortious acts. There is no intimation in the findings that plaintiff ever requested Lipkin to spend any money. On the contrary, when plaintiff rejected the writing presented to him as the written contract, Lipkin had then expended no more than $487.72. While he had placed orders for parts that required the payment of $962, such orders could have been cancelled. Despite his refusal to prepare the written contract, he proceeded to incur indebtedness. He knew then and at all subsequent dates that plaintiff would not sign the document as presented on August 15. He pursued his persistent course in building the new machine with the evident intention of appropriating the invention to his own use. Under no known principle is he entitled to recover the amount of his disbursements. (*Ratea* v. *Izuel*, 14 Cal.2d 605, 610 [95 P.2d 927, 125 A.L.R. 1424].)

 The invention here involved is the property of plaintiff. He had the right to contract for the assignment thereof on terms of his own choosing and to persons of his own choice. No court has the power to divest him of that right or to choose a contractee for him. (*Rosenberg* v. *Lawrence*, 10 Cal.2d 590, 594 [75 P.2d 1082]; *Sacramento Box & Lumber Co.* v. *Rosenberg Bros. & Co.*, 109 Cal.App. 56, 58 [292 P. 146]; *Bennett* v. *Northwestern Nat. Ins. Co.*, 84 Cal.App. 130, 134 [257 P. 586].)

 Inasmuch as plaintiff did not demand possession of machine or parts assembled by defendants, the court had no authority to require plaintiff to accept them as a condition of injunctive relief. Where a plaintiff does not ask for an award of specific personal property it is a gratuitous and meaningless act for the court to extend to him a real or supposed benefit that the litigant manifested no desire to obtain. (*Morrison* v. *Bowman*, 29 Cal. 337, 354.)

 Finally, the contention that the injunction is too

broad is without support. No right of defendants is violated in enjoining them from making, selling or using a machine which has been fabricated by defendants by the use of the ideas and mechanical construction of a machine invented by plaintiff. (*Holley* v. *Hunt,* 13 Cal.App.2d 355 [56 P.2d 1240].) Especially is this true where the information concerning the machine was disclosed in confidence. (*Hollywood M. P. Co.* v. *Furer,* 16 Cal.2d 184, 188 [105 P.2d 299].) Moreover, defendants are in no position now to make such contention after having in open court expressly waived any defense based upon the claim that plaintiff's invention is in the public domain.

It is ordered that (1) the last two paragraphs of the conclusions of law be and are stricken; (2) the judgment be and is amended by striking therefrom the last two paragraphs and by inserting in lieu thereof the following:

"And it is ordered and adjudged that plaintiff recover his costs of suit which are hereby taxed in the sum of $_____."

As so amended the judgment is affirmed.

It is further ordered that plaintiff recover from defendants his costs of appeal.

McComb, J., and Wilson, J., concurred.