### Sumner R. Kates et als v. Hotel Brooks Corp.

[109 A2d 265]

October Term, 1954.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed November 3, 1954.

*Osmer* C. *Fitts* for the plaintiff.

*F. Elliott Barber, Jr.,* for the defendant.

**Jeffords, J.** This is an action of ejectment to recover possession of certain premises for a claimed breach of a covenant in a lease to keep the premises in good and proper repair at the expense of the defendant. There was a trial by jury with a resulting verdict and judgment for the defendant. The case is here on exceptions of the plaintiffs.

The material provisions in the lease are as follows: "The Lessee is to keep in good and proper repair at its expense, all of the real and personal property hereby leased, including the up-keep and maintenance of fixtures, furnishings and personal property, all necessary replacements and additions thereto being made at the expense of the Lessee, with the exception that the maintenance of roofs and fire escapes and the correction of structural defects is the responsibility of the Lessor, at its expense." Also the following: "and upon the condition that all the real and personal property hereby demised shall be kept and maintained during said term of occupancy in as good condition as the same now are, reasonable wear excepted, said Lessee having inspected said real and personal property and knowing the present condition thereof."

It was also provided that upon failure of the lessee, its successors and assigns to perform any of the provisions of the lease for a period of 90 days it should be lawful for the lessor, its successors and assigns to re-enter upon and repossess the premises without notice.

The lease was executed October 1, 1947. The plaintiffs acquired the leased property by a conveyance dated June 11, 1951.

■ The first claim of error relied upon by the plaintiffs relates to the failure of the trial court to charge a claimed request which is set forth in their brief as follows: "The covenant to keep the premises in good and proper repair, reasonable wear excepted, is continuing in nature and imposes an affirmative duty upon the lessee to put the premises in repair if necessary." The plaintiffs then refer us to ten requests by number as showing that they excepted to the failure to so charge. None of these requests contain the same or similar language as that of the claimed request. Most of them are rather lengthy. If the plaintiffs relied on these requests, singly or collectively, as setting forth the claimed request, even in substance, it was their duty to so inform the court and give their reasons supporting their position. This as far as the record shows they did not do. By saying this we are not to be understood as approving of this procedure if it had

been adopted. Each request to charge should be so worded as to clearly show what it is intended that the court should charge. Under the circumstances there was no error in failing to charge the claimed request.

■ However, under our law it seems clear that if the claimed request had been made there would have been no error in the failure of the trial court to so charge. In *Foss* v. *Stanton*, 76 Vt 365 at 368, 57 A 942, it is stated, "The covenant was to keep the premises in good repair—not to put and leave them in good repair." See also *Drouin* v. *Wilson*, 80 Vt 335, 67 A 825.

The plaintiffs rely on only one case from this jurisdiction in support of their claim that it was the duty of the defendant under the covenant in question not only to keep the premises in good repair but also to put them in such repair. They refer us·to the language in *Sturges* v. *Knapp*, 31 Vt 1 at 61. In that case the wording of the covenant differs from the one here. The construction placed on it was based on the subject matter of the lease (running a railroad) and certain stipulations in the lease.

The second and last claim of error which is briefed relates to the time when the duties and obligations of the defendant commenced under the lease. The plaintiffs claim that the time of commencement should be October 1, 1947, the date of the execution of the lease and not June 11, 1951, the date of the acquiring of the property by the plaintiffs. The court charged that the latter date controlled. This question is raised by exceptions to failure to charge as requested on this point and by exceptions to the charge as given.

The law on this point is settled in this jurisdiction in at least two cases. The leading case is that of *Foss* v. *Stanton*, *supra*. This was a suit in justice ejectment. The defendant was in possession of the premises under a written instrument giving a tenancy to extend during the lives of the defendant and his wife. This instrument was construed by the Court to be a lease and subject to the laws pertaining thereto. The plaintiff held the reversionary interest by virtue of a quitclaim deed executed October 6, 1900. The lease was given by the plaintiff's grantors September 21, 1891. There was a

covenant in the lease "to keep the premises in good repair, and surrender them at the end of the term in the same condition as when taken, ordinary wear and providential damage excepted." The question was whether the lease had been forfeited.

The Court reviewed the evidence showing that the buildings on the premises were in a very bad state of repair when the lease was given. The defendants made no repairs on the buildings before suit, except to put two or three planks in the stable.

The Court then said: "The covenant was to keep the premises in good repair—not to put and leave them in good repair. The lessee's duty to the lessor under the covenant is to be measured by the condition of the property when taken. But when the lessor takes no advantage of a failure to keep in repair, and afterwards conveys his interest, the lessee's duty to the assignee is to be measured by the condition of the property at the time of transfer. The covenant to repair runs with the land, and the plaintiff can sue for any breach occurring after she took the title. But the deed gave her no right to proceed for a prior breach. Neither a right of entry nor a right of action can be transferred."

The Court then says that it is not shown when the conditions of the building were reached with reference to the date of the plaintiff's deed and that nothing appears from which it can be said the deterioration subsequent to the transfer was more than ordinary wear of buildings such as these were at the time of the transfer. It is then stated that the notice given twelve days after the plaintiff received her deed was in effect a requirement that the defendant make good the failure to keep in repair during the years preceding her acquirement of the reversion. "The defendant's failure to do this did not constitute a breach for which the plaintiff can claim a forfeiture." The judgment below for the plaintiff was reversed and judgment for the defendant was entered. The holding in this case was followed in *Magoon v. Eastman*, 86 Vt 261 at 264, 84 A 869.

The plaintiffs cite several cases from other jurisdictions which they say support their claim on this point. None of them convince us that we should change our rule.

■ The plaintiffs argue strenuously that the rule laid down in the Foss case and followed in the Magoon case should not here apply to a long term lease on commercial property: They say that to apply it here is to go contrary to modern business practice. They cite *Lehmaier* v. *Jones*, 100 App. Div. 495, 91 NYS 687 in support of this statement. The case does not bear them out on this point. We believe the rule should be a stable one applying to all kinds and classes of property referred to in a covenant such as the one here.

The plaintiffs also attempt to distinguish the Foss and Magoon cases for other reasons. None of these appeal to us as being sound.

Our holdings make it unnecessary to discuss the claim of waiver advanced by the defendant. *Judgment affirmed.*