[Civ. No. 31260. First Dist., Div. Four. Oct. 30, 1973.]

ROBERT L. LANG et al., Plaintiffs and Respondents, v.
GRACIA C. KLINGER et al.,
Defendants, Cross-complainants and Appellants;
TITLE INSURANCE AND TRUST COMPANY,
Cross-defendant and Respondent.

**COUNSEL**

Hawkins & Hawkins, Louis F. Hawkins and David Childers for Defendants, Cross-complainants and Appellants.

Tinning & DeLap, Robert Eshleman, Earl M. Ripley, Edgar B. Washburn and Landels, Ripley & Diamond for Plaintiffs and Respondents and for Cross-defendant and Respondent.

## OPINION

**DEVINE, P. J.**—Gracia C. Klinger and Louis F. Hawkins appeal from a judgment of the Contra Costa County Superior Court enjoining enforcement of their judgment lien against certain property and ordering that they take nothing by their cross-complaint against Title Insurance and Trust Company.

THE JUDGMENT LIEN

*Facts*

Gracia Klinger, appellant, was awarded $6,000 for child support payments (this was the sum of arrearages) by order of the Superior Court of Marin County on September 20, 1967, against her former husband, Max Ferd Klinger. Louis F. Hawkins, appellant, her attorney, was awarded $750 as counsel fees and $40.53 for court costs. Mr. Klinger remarried and bought a home in Contra Costa County, which was put in joint tenancy with his new wife. In April 1969 the Langs, respondents, entered a contract to buy this home for $32,000 but they paid only $500 at this time. The contract of sale was conditional. By the terms of the deposit receipt, the buyers' obligation was contingent on their obtaining financial arrangements; title was to be free of all liens and encumbrances; and lesser conditions related to operability of appliances and clearance in the matter of pest control. On May 5, 1969, abstracts of the Marin County order were recorded in Contra Costa County. The Langs had made no additional payment. They did not know of the order. Later, they completed the purchase. They were purchasers in good faith and for value.

On May 14, 1969, Title Insurance and Trust Company, cross-defendant, which had acted as escrow in the sale, closed its escrow and caused to be recorded a deed from Max Ferd Klinger and Gerd L. Klinger as joint tenants to Robert L. and Rita F. Lang, and simultaneously issued its policy of title insurance to Robert L. and Rita F. Lang with liability limits of $32,000. In preparing to close and in closing said escrow, and in recording the deed and issuing the policy, Title Insurance failed to discover the two abstracts of judgment.

On May 22, 1969, the Marin County Superior Court, in action No. 38255, ordered issuance of two writs of execution against Max Ferd Klinger for nonpayment of the ordered child support. On June 13, 1969, the Sheriff of Contra Costa County levied upon Klinger's interest in the Devona Drive

property, caused public notice to be made and published for execution sale of the realty on July 29, 1969.

*Action and Judgment*

The Langs sought and obtained an injunction preventing defendants in that suit, appellants herein, from proceeding with the sale.

*The Law*

█ A judgment lien attaches to the judgment debtor's property when the abstract of judgment is recorded, provided the judgment debtor has more than a bare legal title. (Code Civ. Proc., § 674; *Majewsky* v. *Empire Constr. Co., Ltd.,* 2 Cal.3d 478, 484 [85 Cal.Rptr. 819, 467 P.2d 547].) If at the time the abstract of judgment is recorded, the judgment debtor who has contracted to sell his property has more than bare legal title, the lien is effective (*Majewsky* v. *Empire Constr. Co., Ltd., supra,* at p. 484). Klinger was in this position because there were several conditions to be met before the purchaser could gain title, including the very one which was breached by the filing of the abstract, namely, absence of liens. The parties to the sale agreed that the property would be free of *any* liens; had any been discovered, the buyers would not have had to proceed. Therefore, title had not passed at the moment appellants' *particular* lien attached. The escrow had not been completed or closed. The lien simply remained as a burden on the property. The home therefore was subject to the lien. The fact that the Langs did not know of the lien does not change the effect of the statute. (*Majewsky* v. *Empire Constr. Co., Ltd., supra,* at pp. 482, 484, 486.) If it were otherwise, the recording laws would be of little use. Prospective buyers and prospective lenders would simply avoid searching the records. Of course, few do personally examine the records—they depend on their title insurance.

In *Majewsky,* the judgment lien attached before the land sale contract was made. But this does not make a substantial difference. The *Majewsky* rule is based on section 674. The lien's encumbrance falls upon the owner's interest in the property at the moment of recording of the abstract by the terms of the statute. █ The judgment enjoining the execution sale must be reversed.

Respondents cite *Whitney* v. *Sherman,* 178 Cal. 435 [173 P. 931]; *Grigsby* v. *Shwarz,* 82 Cal. 278 [22 P. 1041]; and *Iknoian* v. *Winter,* 94 Cal.App. 223 [270 P. 999], wherein judgment creditors levying execution took subject to a prior contract of sale. But in each of those cases, the purchase price had been paid in full to the vendor before the levy was made.

They also cite decisions to the effect that an unrecorded deed takes precedence over an execution levy, but these are irrelevant; in the present case, the levy preceded the deed.

Respondents place reliance also on the doctrine of equitable conversion. ▮ But equitable conversion is a mere fiction which rests on the maxim that equity regards as done that which should have been done. (*Mamula* v. *McCulloch,* 275 Cal.App.2d 184 [79 Cal.Rptr. 571].) It does not become effective as to persons whose claims or rights to the property are purely incidental, not at all connected with its devolution or transfer from the author or through the instrument. (4 Pomeroy, Equity Jurisprudence (5th ed. 1941) §1166, pp. 492-493.) Equity follows the law. (*De Mattos* v. *McGovern,* 25 Cal.App.2d 429, 432 [77 P.2d 522]; *Sketchley* v. *Lipkin,* 99 Cal.App.2d 849, 858; [222 P.2d 927]; *Fleming* v. *Kagan,* 189 Cal. App.2d 791 [11 Cal.Rptr. 737].) The creditors, particularly because they are pursuing property for the purpose of enforcing judicially ordered child support, are not to be deprived of their statutory rights upon a theory of equity, which is designed to effect justice in certain rare cases; and again particularly because the true beneficiary of application of the doctrine would be a title company but for whose negligence the transfer of the property would not have been made.

Indeed, the single authority cited by respondents (on equitable conversion), 50 California Jurisprudence Second, section 118, pages 155, 156, refers to acquisition of equitable title on the execution of a contract of purchase and sale *"except against interests prior in right."* (Italics added.) Such an interest was that of appellants. (*Majewsky* v. *Empire Constr. Co., Ltd., supra.*)

▮ The execution lien extends to all of Max Ferd Klinger's interest in the property. (*Wheeler* v. *Trefftzs,* 228 Cal.App.2d 271, 274 [39 Cal. Rptr. 507].) ▮ The execution sale having been enjoined improperly, it may now proceed.

Respondents argue that tender was made in an amount in excess of the net value of Mr. Klinger's interest in the property, the sale price to the Langs, less encumbrances. The point was not made in the original briefing, nor is there support for it in the settled statement of facts, wherefore it need not be considered. Besides, the value of the property is not established as against the creditors as that price at which the Klingers chose to sell. An execution sale, to which appellants were entitled, might have produced a larger sum.

## The Cross-Complaint

Finally, we consider the subject of attorney's fees and costs which are the subject of the cross-complaint. Although ordinarily attorney's fees are to be paid by the party employing the attorney, there is an exception when a person through the tort of another has been required to act in the protection of his own interests by bringing or defending an action against a third person, in which case he is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees and other expenditures thereby suffered or incurred. (*Prentice* v. *North Amer. Title Guar. Corp.*, 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645].) The primary fault in the present case was that of negligence on the part of the title insurance company which brought about the deeding to the Langs, purportedly by title clear except for other described encumbrances. But the insurer then attempted to escape whatever loss would have to be paid to the Langs by an execution sale pursuant to the Klinger-Hawkins judgment, by filing the complaint for injunction against the sale, using the Langs' name by agreement.

Thus, although appellants were not parties to the escrow, they were injured by the attempted transfer to them of loss from the insureds, and they were compelled to become obligated for attorney's fees and expenses. These are recoverable in the same action, the one brought, actually though not in name, by the title company. (*Prentice* v. *North Amer. Title Guar. Corp.*, *supra*, at p. 621; *Contra Costa County Title Co.* v. *Waloff*, 184 Cal.App. 2d 59 [7 Cal.Rptr. 358].)

 The judgment in so far as it enjoins the execution sale is reversed. The judgment in so far as it decrees that cross-complainants take nothing by their complaint is reversed with directions to the trial court to award to cross-complainants reasonable attorney's fees and expenses in defending the action against them in the superior court and also attorney's fees incurred on appeal. Appellants and cross-complainants will recover costs on appeal.

Rattigan, J., and Bray, J.,* concurred.

The petition of the cross-defendant and respondent for a hearing by the Supreme Court was denied December 27, 1973.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.