626 P.2d 602

**Robert T. COTE, Plaintiff-Appellant,**

v.

**A. J. BAYLESS MARKETS, INC., ABC Corporation; John Does 1–5, Defendants-Appellees.**

No. 1 CA–CIV 4761.
DEPARTMENT C.

Court of Appeals of Arizona,
Division 1.

Jan. 15, 1981.

Rehearing Denied March 5, 1981.

Review Denied April 7, 1981.

Jack J. Rappeport, Tucson, for plaintiff-appellant.

Romley & Sherk by Roger T. Hargrove, Phoenix, for defendants-appellees.

## OPINION

O'CONNOR, Judge.

This is an appeal by Robert T. Cote, the plaintiff in the trial court, from a summary judgment against him and in favor of A. J. Bayless Markets, Inc., the appellee, in an action brought by appellant as a successor-landlord against the appellee for breach of a tenant's covenants to repair and maintain the leased premises.

In reviewing a summary judgment, we must view the evidence in a light most favorable to the party opposing the motion and give that party the benefit of all rea-sonable favorable inferences from the evidence. *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979). The facts here are undisputed. Bayard Realty Company was the owner of a parcel of real property and a building thereon. The property and building were leased to A. J. Bayless Markets, Inc. The lease expired January 31, 1976. On January 28, 1976, Bayard executed an agreement to sell the property and the building to Cote, the appellant, for $215,-000.00. The closing date for the sale was March 1, 1976, on which date Cote acquired the legal title. The agreement of sale included the following language:

The Purchaser understands that the entire premises is currently under lease to the A. J. Bayless Company of Phoenix, Arizona according to the terms of an agreement dated June 2, 1950 executed by E. F. Sanguinetti as a lessor and A. J. Bayless, President of A. J. Bayless Markets Inc. as lessee and that the agreed expiration date of said lease is January 31, 1976. The seller hereby assigns all his right title and interest, as Landlord, as of the date of execution hereof. The purchaser and seller specifically agree that it shall be the purchasers right and responsibility to accept or reject demised premises from the lessee according to the terms of the lease. Acceptance or rejection of the premises by the purchaser shall not disturb the timely closing of this sale as indicated above.

As a condition of the agreement of sale, Bayard agreed to maintain and deliver the property at closing in substantially as good condition as on the date of the agreement. All taxes, rents and insurance were to be prorated to the closing date.

The lease contained the following provisions on which appellant relies:

3. At the expiration of this lease or at its earlier termination lessee shall have the right at its own expense to remove from the building hereby demised all shelving, furniture, fixtures, and equipment of every kind and character brought or placed thereon or therein by lessee, but

lessee shall restore the said building to an undamaged condition following such removal and shall yield up to lessors the said premises and the building thereon located in as good condition, ordinary wear and tear, acts of God and damage by tornado and earthquakes excepted, as the said building and premises were at the time of commencement of this lease.

\* \* \* \* \* \*

5. Lessors may enter and view the state of repairs of the premises and if found out of repair, may make demand upon the lessee to make such repairs, and lessee covenants so to do within (60) days from and after receipt of such request.

6. Lessee covenants and agrees to keep and maintain the building to be erected upon said premises, including the plumbing, electrical wiring and cess pool [*sic*], in a good state of repair during the full term of this lease.

An agent of Bayard had visited the property in 1974 and 1975. He noted the property needed some repair, and was aware of allegations of a leaking roof and warped structural supports. He was also aware that the canopy on the front of the building was damaged, some ornamental tiles had fallen off the front of the building, and the parking lot needed repair. At no time did Bayard demand that Bayless make repairs to the premises. Bayard listed the property for sale with a real estate agent, Joseph C. Ritchie, in August 1975. The asking price was $250,000.00.

Cote visited the property with Ritchie in January, 1976. Ritchie told Cote about the needed repairs. Cote offered to buy the property for $215,000.00, which offer was accepted. Cote testified in his deposition that he considered the necessary repairs in making his offer. On January 28, 1976, the date on which the agreement of sale was executed, Ritchie, acting as Cote's agent, notified Bayless by letter that the condition of the premises did not meet the requirements of paragraph 6 of the lease, and also made demand that the premises be put in a state of good repair so that Bayless could "be in a position to return the property to

the landlord in 'as good condition,' ordinary wear and tear, acts of God and damage by tornado and earthquakes excepted, as the said building and premises were at the time of commencement of this lease." Ritchie wrote a second letter to Bayless the next day repeating the demand and stating that if Bayless preferred, Cote would make the repairs and charge Bayless its share. Bayless did not make the repairs or offer to pay for them. Cote caused the repairs to be made at a cost of approximately $30,000.00. Cote then filed suit against Bayless for breach of the tenant's covenants to repair and maintain the premises and to surrender them in as good condition as when leased, and prayed for damages in the amount of the repairs. After certain pretrial discovery was completed, Bayless filed a motion for summary judgment. This appeal is from the granting of Bayless' motion for summary judgment.

Appellant, Cote, argues that he is the real party in interest and entitled to sue for breach of the covenants to repair and surrender in good condition following the assignment of Bayard's rights in the contract of sale. Appellee concedes that a tenant's covenants to keep the premises in good repair and to surrender the premises in good condition run with the land; however, appellee contends that the new owner of the premises is not entitled to recover damages for breaches occurring prior to the transfer. As stated in 49 Am.Jur.2d, *Landlord and Tenant* § 107 (1970):

The general rule is that the voluntary transfer of the reversion does not carry with it the right to sue the lessee for breaches of his covenants or agreements which occurred prior to the transfer. The main foundation for this rule seems to be that the party owning the real estate at the time of the breach is ordinarily the one injured thereby. Prima facie, he is the party to bring the action even though he has parted with the real estate, since the Statute of 32 Henry VIII ch. 34 and state statutes of a similar import, conferring upon a grantee of the reversion the right to enforce covenants

and conditions in leases, could not well be construed as taking away from the transferor his right of action for an injury causing loss to him personally in the depreciated value of the property, and giving it to the transferee, who has suffered no loss. [footnotes omitted]

49 Am.Jur.2d at 140.

For a case applying this principle *see Foss v. Stanton*, 76 Vt. 365, 57 A. 942 (1904), where the plaintiff acquired the reversionary interest in the premises from the original lessors, and then sued the tenant for breach of the covenant to keep the premises in good repair and to surrender them in good condition at the end of the term. Recovery was denied because the court determined that the breach of the covenant had occurred prior to transfer of the reversionary interest. The court stated:

[W]hen the lessor takes no advantage of the failure to keep in repair, and afterwards conveys his interest, the lessee's duty to the assignee is to be measured by the condition of the property at the time of the transfer. The covenant to repair runs with the land, and the plaintiff can sue for any breach occurring after she took the title. But the deed gave her no right to proceed for a prior breach. Neither a right of entry nor a right of action can be transferred.

76 Vt. at 368–69, 57 A. at 943. *See also Bailey v. Meade*, 250 Mass. 46, 144 N.E. 110, 34 A.L.R. 779 (1924); *Kates v. Hotel Brooks Corporation*, 118 Vt. 324, 109 A.2d 265, 20 A.L.R.2d 1331 (1954).

■ A breach of the covenant to keep the premises in good repair during the lease term, as required by paragraph 6 of the lease, would have occurred in this case prior to the execution of the contract of sale by Bayard to Cote. Under the general rule cited above, appellant Cote thus acquired no right of action against appellee for any breach of the covenant in paragraph 6 which preceded his acquisition of rights in the property. Accordingly, we affirm the trial court's grant of summary judgment in favor of Bayless as to the paragraph 6 covenant.

■ However, paragraph 3 of the lease contains language to the effect that the premises would be surrendered at the expiration of the lease term in as good condition as when originally leased, ordinary wear and tear, acts of God, and natural disasters excepted. All clauses of a lease must be considered and given effect in relation to each other. *Alabam Freight Lines v. Stewart*, 70 Ariz. 140, 217 P.2d 586 (1950). Although paragraph 3 also contains language dealing with removal of fixtures, furniture, and equipment by the lessee, in our opinion the requirement of surrendering the premises in good condition at the end of the lease term is not limited to merely restoration of the premises upon the removal of fixtures, but is an additional covenant to surrender the premises in as good condition as when leased, other than for damage from the excepted causes listed. "Where the lease contains a covenant to repair and a covenant to leave in repair, the covenants are generally treated as independent covenants...." 49 Am.Jur.2d, *Landlord and Tenant* § 949 at 925 (1970). *See also* 20 A.L.R.2d 1331 at 1357 (1951); 45 A.L.R. 12 at 80 (1926). The covenant to surrender the premises in good condition could not be breached until the end of the term. The general rule is stated in *City Hotel Co. v. Aumont Hotel Co.*, 107 S.W.2d 1094, 1095 (Tex.Civ.App. 1937):[1]

The courts have uniformly observed a distinction between a covenant upon the part of a lessee to keep leased premises in repair, and a covenant to deliver up the premises at the expiration of the term in as good condition of repair as they were at the beginning of the term. A covenant to keep in repair requires the tenant to keep the premises in repair at all times during the term, and if he permits them to get out of repair at any time, the lessor, upon that breach, may sue during

---

1. In *City Hotel Co. v. Aumont Hotel Co.*, the court rejected the defendant lessee's contention that no action could be brought until the term

ended because the lessee was already in breach of a separate covenant to keep in repair.

the term as for injury to the reversion; whereas, on a covenant to leave the premises in as good condition as he found them, no action will lie against the lessee until the end of the term, for obvious reasons. [citations omitted]

In *Knutsen v. Cinque*, 113 App.Div. 677, 99 N.Y.S. 911 (1906), a lessee sued the landlord after the lease term ended, seeking return of a security deposit which the landlord had taken to insure the lessee's performance of all the lease covenants. The landlord, who had conveyed the leased property to another seven months before the lease expired, counterclaimed for damages done by the lessee, alleging that the lessee had breached his covenant to surrender the premises in as good condition as when he took them. On appeal, the court affirmed the lower court's judgment for the plaintiff lessee:

*The action did not accrue until the expiration of the lease*, for the plaintiff could have restored [the damaged property] up to that time. It follows that *the right of action set up in the counterclaim is in the defendant's grantee.* He purchased the land subject to the lease, and succeeded to his grantor's rights under the covenants of the lease. [emphasis added]

113 App.Div. at 678, 99 N.Y.S. at 912. *See also Bowes v. Saks & Co.*, 397 F.2d 113 (7th Cir. 1968); *Griffin Grocery Co. v. McBride*, 217 Ark. 949, 235 S.W.2d 38 (1950); Annot., 34 A.L.R. 782, 802 (1925). These authorities indicate that the paragraph 3 covenant to surrender the premises in good repair at the end of the term could not be breached until the term ended on January 31, 1976, three days after appellant Cote and Bayard executed the agreement to sell the property subject to the lease.

■ Appellant contends that no action for breach of the covenant in paragraph 3 could be brought until the surrender of the premises in the defective condition, and, in this case, appellant was the beneficial or equitable owner of the premises on the date of its surrender, although the legal title did not pass to appellant until March 1, 1976. He argues that, as the equitable owner of the reversion when the lease expired, he was entitled to sue the lessee for any breach of the covenant to surrender the premises in good condition. As explained in 51C C.J.S., *Landlord and Tenant* § 368(3), p. 948 (1968):

The benefit of the tenant's covenant to repair follows the reversion and may be enforced by the grantee of the reversion. On the other hand, one to whom the landlord assigns a lease only, without the reversion, cannot maintain an action on such a covenant in his own name; and the assignee of the landlord cannot proceed against the tenant for a breach prior to the assignment. [footnotes omitted]

We agree.

Appellant and Bayard executed a binding contract for sale of the property subject to the existing lease on January 28, 1976, and appellant paid $5,000.00 earnest money. At the moment a binding contract for sale of land is executed, equity treats the vendee as the owner of the realty. The vendor, though holder of the legal title until the transaction closes, holds it as personalty in trust for the vendee, to whom all beneficial interest passes. *Lebrecht v. Beckett*, 96 Ariz. 389, 396 P.2d 13 (1964); *Shreeve v. Greer*, 65 Ariz. 35, 173 P.2d 641 (1946).

Appellee cites *Lang v. Klinger*, 34 Cal. App.3d 987, 110 Cal.Rptr. 532 (1973) for the proposition that the doctrine of equitable conversion affects only the situation between the contracting parties and is ineffective as to persons whose claims or rights to the property are purely incidental. However, *Lang* defined "purely incidental" interests as those "not at all connected with [the property's] devolution or transfer from the author or through the instrument." *Id.* at 992, 110 Cal.Rptr. at 534. In particular, that case refused to apply equitable conversion to defeat the rights of judgment creditors with liens on the debtor's realty when the debtor attempted to convey the realty in a conditional sale before the liens could be executed. In the case at bar, even if equitable conversion applied only as between the parties, Bayard and Cote, Bayless would not thereby be deprived of any inter-

est or right in the realty or in the vendor's personalty interest.

Appellee concedes that covenants to repair and to surrender in good condition run with the land. The right to enforce any such covenant not yet breached passed to appellant Cote with the beneficial ownership of the land. Inasmuch as the paragraph 3 covenant to surrender the premises in good condition at the end of the lease term was breached, if at all, at the end of the term, and because appellant was then the equitable owner of the property, appellant is entitled to recover damages for any breach of that covenant by appellee.

Appellant admitted that he considered the deteriorated condition of the property in deciding how much to offer for it. Appellee argues from this that Bayard rather than Cote is the proper party to bring an action on the covenants, because Bayard presumably was injured by having to accept less money for the property than if it had been in good repair and Cote presumably benefitted by buying the property at a lower price. However, it is equally possible that Cote also considered appellee's duty to repair in agreeing to accept the property subject to the lease. Cote stated in his deposition that he was aware of Bayless' duty to return the property in good condition when he decided how much to offer for the property. Appellee contends that appellant will be unjustly enriched if he recovers the cost of repairs from appellee after already benefitting from the lower price. We do not agree because the right to sue on the alleged breach of paragraph 3, which occurred after the transfer of the beneficial ownership of the property, was in appellant and not in Bayard. *Knutsen v. Cinque,* 113 App.Div. 677, 99 N.Y.S. 911 (1906). If appellant does recover, he will be recovering in his own right on appellee's breach of its duty to appellant under paragraph 3 of the lease. It may be that Bayard also may have had claims against appellee for breach of its other covenant in paragraph 6 to maintain the property in good repair while Bayard was the owner. However, possible claims of other parties do not affect appellant's right to recover on his own claim.

Appellant contends that, even if he were not the equitable owner of the reversion on January 28, he was the assignee of the lessor's chose in action by virtue of the contract of sale. This latter argument was not made in the trial court and may not be asserted for the first time on appeal from a summary judgment. *Gallego v. Strickland,* 121 Ariz. 160, 589 P.2d 34 (App.1978); *Crook v. Anderson,* 115 Ariz. 402, 565 P.2d 908 (App.1977).

Finally, appellee contends that the evidence does not establish that Ritchie was authorized to act as appellant's agent in making the demand for repairs by Bayless. We disagree, based on a review of the record. The burden of proof of the existence of an agency relationship is on the party alleging that it exists. Whether an agency relationship exists is a question of the intent of the principal. *Salt River Valley Water Users' Ass'n v. Giglio,* 113 Ariz. 190, 549 P.2d 162 (1976). No express contract between principal and agent is required to establish an agency relationship. *Phoenix Western Holding Corp. v. Gleeson,* 18 Ariz.App. 60, 500 P.2d 320 (1972). Both Cote and Ritchie stated in their depositions that they worked together in drafting the letters, which were signed "Joseph C. Ritchie Representing Robert T. Cote." Cote also testified that he orally authorized Ritchie to act for him in this matter. This testimony was uncontroverted. The question of whether an agency relationship exists is a question of law for the court when the material facts from which it is to be inferred are not in dispute. *Warren v. Mangels Realty,* 23 Ariz.App. 318, 533 P.2d 78 (1975). We believe that the undisputed facts here show that Ritchie was acting as Cote's agent in demanding that repairs be made.

In addition, appellee contends that Bayless was not required to comply with an agent's demands, but was entitled to deal only with Cote as principal. The argument is that an agent acting outside the scope of

authority granted by the principal does not bind the principal. Because anyone who deals with an agent bears the risk that the principal will not be bound, no one is required to deal with an agent. *Brutinel v. Nygren*, 17 Ariz. 491, 154 P. 1042 (1916). Appellee argues that Bayless was thus entitled to ignore Ritchie's demands on Cote's behalf. We do not believe that *Brutinel* supports this position. *Brutinel* involved an unauthorized contract negotiated by an agent with a third party when the principal was totally unaware of the agent's acts. In that case the court held that the principal was not bound. In the present case, Cote was fully aware of Ritchie's acts and authorized them; Bayless' obligations pre-existed the demands by Ritchie; and Bayless was not attempting to bind Cote to anything. Also, Bayless never made any demand to deal with Cote personally; rather, Bayless totally ignored both of Ritchie's letters. We find that appellee's contention is without merit.

Because we have determined that appellant is entitled to recover for any breach of the paragraph 3 covenant of the lease, we reverse the trial court's grant of summary judgment to Bayless as to that issue and remand the matter for determination of whether a breach occurred and, if so, the amount of damages caused by appellee's breach, not including normal wear and tear or other excluded factors. *See Lindsay Bros., Inc. v. Milwaukee Cold Storage Co.*, 58 Wis.2d 658, 207 N.W.2d 639 (1973).

The judgment of the trial court is affirmed in part, reversed in part, and remanded for trial on the remaining issues consistent with this opinion.

OGG, P. J., and YALE McFATE, J. (Ret.), concur.