[No. H002156. Sixth Dist. Mar. 8, 1988.]

PAUL M. HEPE, Plaintiff and Appellant, v.
DAVID PAKNAD et al., Defendants and Respondents.

COUNSEL

Barney Elders for Plaintiff and Appellant.

Chris A. Tarkington, Malcolm A. Barrack, Alicia J. Donahue and Tarkington, O'Connor & O'Neill for Defendants and Respondents.

OPINION

**BRAUER, J.**—Plaintiff and appellant Paul Hepe appeals a judgment dismissing the action against defendants and respondents David Paknad, Joyce Hoist, and the "Woodshed" (collectively respondents) after a demurrer was sustained without leave to amend. We affirm.

### I. FACTS

On September 22, 1984, Paul Hepe was injured in a traffic accident. Hepe, who was riding a motorcycle, was struck by James Shimer, who was driving a car. Before the accident, Shimer had consumed alcoholic beverages in the "Woodshed," a bar owned by David Paknad. Joyce Hoist, a waitress at the Woodshed, had served Shimer.

Hepe alleges that Shimer was intoxicated at the time of the accident and that the respondents are liable for serving Shimer. Ordinarily, of course, Business and Professions Code section 25602 makes the servers of alcoholic beverages immune from civil liability for injuries caused by intoxication. Hepe seeks to avoid the statutory immunity with the following allegations: respondents "knew, or should have known, that [Shimer] was afflicted with an exceptional physical and mental condition, to wit, alcoholism, so that he

should not have been furnished alcoholic beverages; that the beverages were nevertheless furnished to [Shimer] with the result that he engaged in the foreseeable conduct of an alcoholic of consuming alcohol to excess which, in turn, affected his mental and physical judgment and coordination."

Following the accident Shimer allegedly "returned to [the Woodshed] where he had been drinking and the owner [Paknad] drove him away from the area with the knowledge and intent that this would make it difficult to establish [that Shimer's] operation of his vehicle [had been] under the influence [of alcohol]."

In his complaint, Hepe named respondents Paknad, Hoist, and the Woodshed as defendants.[1] Based upon respondents' service of alcoholic beverages, Hepe attempts to state causes of action for negligence, assault, battery, negligent hiring, and products liability. Based upon the events following the accident, Hepe attempts to state additional causes of action for fraud and interference with prospective economic advantage. Respondents demurred to Hepe's complaint, and the court sustained the demurrers without leave to amend.

## II. Discussion

On appeal, our task is to determine whether the complaint stated facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) ■ Since "[a] demurrer tests only the legal sufficiency of the pleading" (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660]), we do not consider whether Hepe will be able to prove his allegations. Instead, we treat the demurrer as admitting all material and issuable facts properly pleaded. (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].)

### A. *Business and Professions Code Section 25602*[2]

■ Hepe's claims for negligence, assault, battery, negligent hiring, and products liability are all premised upon respondents' service of alcoholic beverages to Shimer, the driver at fault. Each of these claims depends upon the theory that respondents' service of alcohol was a proximate cause of

---

[1] Hepe also named as defendants Shimer (the driver), Gregory and Jeanette Grigsby (the car's owners), and Kathleen Williams (who "encouraged" Shimer to operate the car while intoxicated). These additional defendants are not parties to this appeal, and Hepe's claims against them are not before us.

[2] All further references are to the Business and Professions Code unless otherwise indicated.

Hepe's injuries. The claim for negligence challenges the wisdom of serving alcohol to Shimer in light of his alleged alcoholism. The claims for assault and battery are designed to trace responsibility for the vehicular collision back to those who served alcohol. The claim for negligent hiring relates to the waitress who served the drinks. The claim for products liability is based on the absence of warning labels on the alcoholic beverages that respondents served.

These claims might have survived a demurrer a decade ago. Today, however, section 25602 bars each claim. Section 25602, as amended by the Legislature in 1978, confers a "sweeping immunity" upon the servers of alcoholic beverages through a legislative determination that "the consumption of alcoholic beverages rather than the serving . . . [is] the proximate cause of injuries inflicted upon another by an intoxicated person." (§ 25602, subd. (c); see also Civ. Code, § 1714, subd. (b); see *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 725 [209 Cal.Rptr. 347, 691 P.2d 1013]; *Cory* v. *Shierloh* (1981) 29 Cal.3d 430, 436 [174 Cal.Rptr. 500, 629 P.2d 8] [holding that § 25602 is constitutional].)

Prior to 1971, persons injured by intoxicated persons could not state a justiciable claim against those who had served the alcoholic beverages. A typical decision on point is *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137], in which the Supreme Court held that "as to a competent person it is the voluntary consumption, not the sale or gift, of intoxicating liquor which is the proximate cause of injury from its use." (*Id.* at p. 356.) In 1971, the Supreme Court changed its position to allow injured persons to state causes of action based upon a violation of former section 25602, which made it a misdemeanor to serve alcoholic beverages to "any habitual or common drunkard or to any obviously intoxicated person." (§ 25602, subd. (a); *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151].) In subsequent decisions, the Supreme Court further expanded the tort liability of persons who served alcohol by holding that the usual rules of proximate cause and foreseeability would govern. (*Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719]; *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669].)

In 1978, however, the Legislature directly intervened in the development of court-created law in this area by amending section 25602 with the addition of two new subdivisions. The first new subdivision, in the following language, precludes use of the misdemeanor prohibition as a standard of care in tort actions: "(b) No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall be civilly liable to any injured person or the

estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage." (§ 25602, subd. (b).)

The second new subdivision expressly abrogates the line of judicial decisions imposing liability on persons who serve alcohol: "(c) The Legislature hereby declares that this section shall be interpreted so that the holdings in cases such as [*Vesely* v. *Sager, supra* 5 Cal.3d 153, *Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d 313 and *Coulter* v. *Superior Court, supra,* 21 Cal.3d 144] be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person." (§ 25602, subd. (c).)

The effect of these amendments was to return California law to the earlier rule typified by *Cole* v. *Rush, supra*. In 1981, however, one court resumed judicial activity in this area with a new, nonstatutory exception to section 25602. In *Cantor* v. *Anderson* (1981) 126 Cal.App.3d 124 [178 Cal.Rptr. 540], the court held that, "where a social host knows his guest is one who *because of* some exceptional physical and mental condition should not be served alcoholic beverages and is or should be aware of the risks included in providing such person with alcohol, the host is not protected by [the immunity statute]."[3] (*Id.* at p. 132.)

The plaintiff in *Cantor,* who ran a home for developmentally disabled persons, was injured by a resident of the home. The plaintiff's neighbors had served alcohol to the resident, Edward, "with full knowledge of his disability." (*Id.* at p. 126.) After consuming alcohol, "Edward fell into a seizure, lost consciousness, was rendered unable to control his actions, and subsequently became violent." (*Ibid.*) When the plaintiff attempted to aid Edward, he injured her.

In the *Cantor* court's view, the defendants, who had served the alcohol, "should have known the effect that liquor would have on [Edward] *by reason of* his disability . . . ." (*Id.* at p. 131.) Reasoning that section 25602 does not preclude liability based upon a "concurrent proximate cause," the *Cantor* court viewed service of alcohol to a person with an exceptional condition as a proximate cause of injury distinct from service of alcoholic beverages to ordinary persons. The Legislature provided only a single exception to the immunity statute for service of alcohol to "obviously intoxicated minor[s]." (§ 25602.1.) But the court found authority for a new,

---

[3] Since the defendents in *Cantor* v. *Anderson, supra,* were social and not commercial hosts, the court considered the effect of two immunity statutes: section 25602 and Civil Code section 1714. (*Cantor* v. *Anderson, supra,* 126 Cal.App.3d at p. 128, fn. 4.)

judicial exception in the idea that, "in returning to the rule of *Cole* [*supra*], we also return to the limitations of the rule." (*Cantor* v. *Anderson, supra,* 126 Cal.App.3d at p. 130.) *Cole* did not involve an incompetent person, but the court had included the word "competent" in its formulation of a rule about proximate causation. Specifically, the *Cole* court made—and *Cantor* is based upon—the following statement: "as to a *competent* person it is the voluntary consumption, not the sale or gift, of intoxicating liquor which is the proximate cause of injury resulting from its use." (*Cole* v. *Rush, supra,* 45 Cal.2d at p. 356 (italics added), quoted in *Cantor* v. *Anderson, supra,* 126 Cal.App.3d at p. 130.)

In this case, plaintiff Hepe relies on *Cantor* to preserve his claims. Paraphrasing that decision, Hepe alleges respondents knew that Shimer "was afflicted with an exceptional physical and mental condition, to wit, alcoholism, so that he should not have been furnished alcoholic beverages; that the beverages were nevertheless furnished to defendant [Shimer] with the result that he engaged in the foreseeable conduct of an alcoholic of consuming alcohol to excess which, in turn, affected his mental and physical judgment and coordination; with the further foreseeable result that said [Shimer] operated a motor vehicle under the influence of alcohol."

We are disinclined to expand the *Cantor* decision, which does not have a sound statutory basis. As the Supreme Court categorically held in *Strang* v. *Cabrol, supra,* 37 Cal.3d 720, "the Legislature abolished tort liability against the furnisher of alcoholic beverages except in only one situation, namely, providing alcohol to an obviously intoxicated minor. No other exceptions to this immunity exist." (*Id.* at p. 728.) The court reasoned as follows: "The maxim *expressio unius est exclusio alterius* applies here. Under this familiar rule of construction, an express exclusion from the operation of a statute indicates the Legislature intended no other exceptions are to be implied. [Citations.] The 'single exception' to the 'sweeping immunity' afforded by the 1978 amendments (*Cory* v. *Shierloh, supra,* at p. 436) is in cases of sale by a licensee to an obviously intoxicated minor (§ 25602.1)." (*Strang* v. *Cabrol, supra,* at p. 725.)

In repudiating the idea that courts may continue to create implied exceptions to the immunity statutes, the Supreme Court took a step essential to achieving the purpose of section 25602. Implied exceptions frustrate legislative efforts to define civil liabilities and to prescribe clear rules of behavior. Prior to *Strang* v. *Cabrol, supra,* implied exceptions had already engendered significant confusion. For example, the Supreme Court in *Cory* v. *Shierloh, supra,* 29 Cal.3d 430, held that liability *could not* be predicated on sales of alcohol to a minor in a case where the sole statutory exception (§ 25602.1)

did not apply. Just nine months later, however, the Fourth District Court of Appeal came to the opposite conclusion. (*Burke* v. *Superior Court* (1982) 129 Cal.App.3d 570 [181 Cal.Rptr. 149]; overruled by *Strang* v. *Cabrol, supra,* 37 Cal.3d 720.) Where *Cory* had addressed sales of alcohol by an unlicensed seller to an obviously intoxicated minor, *Burke* involved sales by a licensed seller to a minor who was not obviously intoxicated. This ground for distinguishing *Cory* (see *Burke* v. *Superior Court, supra,* 129 Cal.App.3d at p. 573) evaded *Cory's* essential holding: the sole statutory exception is exclusive.

Such confusion no longer obtains after *Strang* v. *Cabrol,* since that decision clearly and categorically establishes that "no other exceptions are to be implied." In the process, it also overruled *Burke.* (*Strang* v.*Cabrol, supra,* at pp. 725, 728.)

So, after reading the Supreme Court opinion up to that point, one is startled to note a laudatory reference to *Cantor.* (*Id.* at p. 726.) How can the same high court opinion affirm that there is only one exception and then seemingly approve of a Court of Appeal decision which, by judicial fiat, engrafted a second one upon the law?[4] What is the duty of an intermediate appellate court when confronted with irreconcilable language in the same binding precedent? *Auto Equity* [5] does not guide us out of that dilemma. We therefore fashion our own answer: we follow the holding rather than the dictum, especially where the holding is so manifestly compelled by the expressed intent of the Legislature. To repeat: ". . . the Legislature abolished tort liability against the furnisher of alcoholic beverages except in only one situation, namely, providing alcohol to an obviously intoxicated minor. No other exceptions to this immunity exist." (*Strang* v. *Cabrol, supra,* at p. 728.) It follows that plaintiff Hepe cannot state a cause of action.

---

[4] Even after that verbal boost, *Cantor* has not thrived. In only one other reported decision has a court expressly considered whether to apply the "exceptional physical or mental condition" exception in a new factual context. Rejecting the plaintiff's analogy to *Cantor,* the court in *Bass* v. *Pratt* (1986) 177 Cal.App.3d 129, 136 [222 Cal.Rptr. 723], held that youth did not constitute an exceptional physical or mental condition.

The court in *Andre* v. *Ingram* (1985) 164 Cal.App.3d 206 [210 Cal.Rptr. 150], avoided discussing whether alcoholism constitutes an exceptional physical or mental condition under *Cantor.* In *Andre,* an intoxicated driver's passenger sued the driver's mother, who had allowed alcohol to be consumed at her home. The injured passenger argued that the mother "had a duty to warn [the passenger] that because [the driver] was an alcoholic, he might be intoxicated even if it was not obvious." (*Id.* at p. 211.) The *Andre* court distinguished *Cantor* on the basis that the defendant in the former case had not served alcohol but merely allowed others to drink at her home. The court also summarily rejected an analogy to cases imposing liability on the basis of a " 'special relationship.' " (See, e.g., *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)

[5] *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].

## B. *Fraud and Interference with Prospective Economic Advantage*

Hepe relies upon events following the traffic accident to state causes of action for fraud and interference. After the accident, according to the complaint, Shimer (the driver) returned to the bar. Paknad (the bar's owner) drove Shimer away from the area to "make it difficult to establish that [Shimer] had been operating the vehicle at the time of the accident under the influence of alcohol."

■ Arguing that he has stated a cause of action for fraud, Hepe characterizes Paknad's and Shimer's conduct as a misrepresentation or concealment of material facts. One definition of deceit is "[t]he suppression of a fact, by one who is bound to disclose it." (Civ. Code, § 1710.) A concealment is tortious, however, only when the other elements of a cause of action for fraud exist. In this case, Hepe has failed to allege reliance. The following purported allegations of reliance in Hepe's complaint are, in fact, simply allegations of damage: "Plaintiff [Hepe] was required to expend much greater effort in establishing that defendant [Shimer] was under the influence of alcohol at the time of the accident. [¶] Plaintiff's agents, law enforcement [officials], were unable to bring criminal charges against [Shimer] for operating his vehicle under the influence of alcohol to the damage of plaintiff as set forth, above."

In short, since Hepe did not "alter his position" in reliance on respondents' actions (Civ. Code, § 1709), he cannot state a cause of action.

■ To state a cause of action for interference with prospective economic advantage, Hepe alleges that he had a prospective right "to recover damages for the conduct of [Shimer] in operating the vehicle under the influence of alcohol." Because of defendants' interference with this right, the allegations continue, Hepe "will be prevented from recovering punitive damages from [Shimer] and will be unable to prevent the discharge of any judgment obtained in bankruptcy as a non-dischargable debt arising from intentional conduct."

Two related obstacles prevent Hepe from stating a cause of action for interference with prospective advantage. First, Hepe's interest in an unlitigated claim for punitive damages and in a possible, future judgment that may or may not remain enforceable after a defendant's bankruptcy are not *the sort of economic relationships that the interference tort has traditionally* protected. This is a critical point, since the Supreme Court in recent decisions has refused to expand the interference tort beyond the context of " 'the expectancies involved in ordinary commercial dealings.' " (*Youst* v. *Longo*

(1987) 43 Cal.3d 64, 75 [233 Cal.Rptr. 294, 729 P.2d 728]; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 330 [216 Cal.Rptr. 718, 703 P.2d 58].)

Second, to state a cause of action for interference, the plaintiff must adequately "allege facts showing interference with a *probable* economic gain." (*Youst* v. *Longo, supra,* 43 Cal.3d at p. 77.) The probability of gain is a "threshold element." (*Ibid.*) In cases involving interference with business relationships, " 'there is a background of business experience on the basis of which it is possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered.' " (*Youst* v. *Longo, supra,* 43 Cal.3d at p. 75, [italics omitted] quoting Prosser & Keeton, Torts (5th ed. 1984) § 130, p. 1006.) In contrast, the chances of obtaining punitive damages or a judgment that may remain enforceable after a defendant's bankruptcy are too speculative to constitute a probable economic gain.

## C.  *Dismissal Without Leave to Amend*

The superior court sustained respondents' demurrers without giving Hepe leave to amend. Under the circumstances, this was a proper exercise of the court's discretion. Although leave to amend should normally be granted, there are cases in which it is not reasonable to expect that the plaintiff will be able to state a valid cause of action. (*Leakes* v. *Shamoun* (1986) 187 Cal.App.3d 772, 778 [232 Cal.Rptr. 171].) It is within the court's discretion to deny leave when "the action is barred as a matter of law" or "[i]f, from the nature of the defects in the complaint it appears the plaintiff cannot state a cause of action." (*State of California Auto Dismantlers Ass'n.* v. *Interinsurance Exchange* (1986) 180 Cal.App.3d 735, 742 [225 Cal.Rptr. 676], citing *Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 742 [146 Cal.Rptr. 271]; *La Vista Cemetery Ass'n.* v. *American Sav. & Loan Ass'n.* (1970) 12 Cal.App.3d 365, 369 [90 Cal.Rptr. 722].)

Since section 25602 bars Hepe's claims for negligence, assault, battery, negligent hiring, and products liability, no amendment will permit him to state a cause of action. Hepe argues to the contrary that, if permitted to amend, he could allege that the respondents' service of alcohol was reckless. However, reckless conduct does not constitute an exception to the immunity statute.[6] The statute's determination that the service of alcoholic

---

[6] In support of this argument, Hepe invokes *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389 [143 Cal.Rptr. 13, 572 P.2d 1155]. The citation is not apposite. The *Ewing* case was a wrongful death action brought against a bartender's employer by the children of a man who died from consuming too much alcohol. (*Id.* at p. 394.) The *Ewing* court discussed reckless conduct not as an exception to common law immunity but in the context of discussing contributory negligence and assumption of risk. (*Id.* at pp. 402-407.) Moreover, the *Ewing* decision

beverages is not a "proximate cause of injuries" is not limited to actions for negligence.

Hepe has not suggested that amendment would allow him to remedy the deficiencies in his pleading of fraud and interference with prospective economic advantage. Since the events underlying his complaint do not fall within the traditional scope of these torts, there is no reasonable possibility that he can state a cause of action, and the court did not abuse its discretion by denying leave to amend.

## III.  DISPOSITION

The judgment of dismissal is affirmed. Respondents' request for sanctions is denied.

Agliano, P. J., and Capaccioli, J., concurred.

A petition for a rehearing was denied March 23, 1988, and appellant's petition for review by the Supreme Court was denied May 25, 1988.

---

preceded the amendments to section 25602 which created statutory immunity. Thus, *Ewing* has been abrogated by statute to the extent it is based upon "the holdings in cases such as [*Vesely* v. *Sager, supra,* 5 Cal.3d 153, *Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d 313 and *Coulter* v. *Superior Court, supra,* 21 Cal.3d 144]." (§ 25602, subd. (c).) That the Legislature did not specifically mention *Ewing* as one of the cases abrogated makes no difference.