[No. A047652. First Dist., Div. Three. May 30, 1990.]

CHARLES D. SOOY, Cross-complainant and Appellant, v.
BRADLEY PETER, Cross-defendant and Respondent.

## COUNSEL

Tobin & Tobin, C. Darrell Sooy and Lawrence R. Jannuzzi, for Cross-complainant and Appellant.

Morton, Lulofs & Allen, G. Geoffrey Wood, William R. Morton and Karen D. Marcus, for Cross-defendant and Respondent.

## OPINION

WHITE, P. J.—In this appeal we consider whether a defendant, who has been forced to defend a lawsuit precipitated by the negligence of the plaintiff's counsel, is entitled to recover from the negligent lawyer attorney fees and costs incurred in defending the lawsuit. We conclude that the defendant is not entitled to such compensation in this case.

## ■ ■ ■ ■ FACTS[1]

The issue on appeal arises from a foreclosure sale of real property located in Napa County. San Francisco Federal Savings and Loan held the first deed of trust on the property and was represented in the foreclosure by its attorney, appellant Charles D. Sooy. Eddie and Lynn Whitehead were the beneficiaries of a junior deed of trust on the property. They were represented in the foreclosure proceedings by their attorney, respondent Bradley Peter.

The property was sold under the first deed of trust in March of 1987. San Francisco Federal was the sole bidder at its own foreclosure sale. The Whiteheads did not appear at the sale and alleged they did not learn of the sale until weeks after it occurred.

After San Francisco Federal sold the property to a third party, the Whiteheads filed suit, naming San Francisco Federal, appellant Sooy and the third party buyer as defendants. The Whitehead complaint alleged causes of action for negligent misrepresentation, fraud, and improper trustee sale, among others. The heart of the Whitehead complaint was that Sooy had falsely represented to their attorney Peter "(1) that a pending foreclosure sale of the property was stayed by order of the Bankruptcy Court; (2) that the stay would remain in effect so long as the debtor in possession continued making current payments on SAN FRANCISCO FEDERAL'S Note; (3) that [the Whiteheads] would receive prompt notification if, or when, the debtor in possession subsequently defaulted on the Note, causing the stay to automatically terminate; (4) that upon any subsequent termination of the stay plaintiffs would receive adequate and sufficient notice of each scheduled foreclosure date; and (5) that plaintiffs would be provided with adequate and sufficient notice of each and every postponement of the foreclosure sale."

The complaint further alleged that Sooy failed to provide the promised notice and that this caused the Whiteheads to miss the foreclosure sale and deprived them of an opportunity to bid on the property, thus resulting in the loss of their security interest.

[1] The present case is before us following a judgment of dismissal entered after the trial court sustained a demurrer to a cross-complaint. Since "[a] demurrer tests only the legal sufficiency of the pleading" (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660]), we do not consider whether the cross-complainant will be able to prove his allegations. Instead, we accept as true all material facts properly pleaded in the cross-complaint. (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137]; *Hepe* v. *Paknad* (1988) 199 Cal.App.3d 412, 415 [244 Cal.Rptr. 823].)

Appellant Sooy answered and generally denied the allegations in the complaint. In addition, he filed a cross-complaint against Peter seeking compensation for attorney fees and other costs incurred by Sooy in defending the Whiteheads' suit on the theory that these costs were damages attributable to a "Third Party Tort" (namely, Peter's professional negligence). In particular, Sooy alleged in his cross-complaint that Peter had negligently failed to protect the Whiteheads' interests when he did not keep informed of the status of the bankruptcy stay and that this failure caused the Whiteheads to miss the foreclosure sale. The cross-complaint further alleged that as a direct result of Peter's negligence, the Whiteheads had filed suit against Sooy requiring him to employ counsel and sustain other costs. The cross-complaint sought compensation for these expenses.[2]

Peter demurred to the cross-complaint's "Third Party Tort" cause of action on the ground that Peter owed no duty of due care to Sooy. The trial court sustained the demurrer and granted Sooy 20 days to amend the cross-complaint. Sooy did not amend, and the trial court dismissed the cross-complaint and entered judgment in favor of Peter. ■■■■ Sooy filed a timely notice of appeal from this judgment.[3]

DISCUSSION

■ Sooy contends he is entitled to recover from Peter the costs of defending the Whitehead lawsuit (including attorney fees) on the theory that he incurred those costs as the result of the "tort of another" (the "other," of course, being Peter). Peter contends the "tort of another" doctrine is not applicable here because he owed no legal duty of due care to Sooy. We agree with Peter that the "tort of another" doctrine is inapplicable on the facts pled.

■ The doctrine permitting a litigant to recover attorney fees and related costs incurred as the result of the "tort of another" has its modern genesis in *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618 [30 Cal.Rptr. 821, 381 P.2d 645]. There, the sellers of real property sued their escrow agent for negligence. The sellers alleged that the escrow agent's negligence required them to bring an action to quiet title against the purchaser and the beneficiary of a first deed of trust. The trial court found that the defendant had been negligent in closing the sale and awarded the sellers

---

[2] The cross-complaint also alleged causes of action for equitable indemnity and comparative indemnification. However, Sooy has abandoned those causes of action on appeal.

[3] Since this judgment dismisses a cross-complaint by the defendant against a third party, it is appealable as a final determination of a collateral matter independent of the rest of the action. (*Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 303 [259 P.2d 901]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 53, pp. 75-76.)

*as damages* the amount of attorney fees incurred by them in prosecuting the action against the purchaser and the trust deed beneficiary. In affirming, the Supreme Court noted that as a general rule attorney fees are to be paid by the party employing the attorney. However, the court recognized and applied the following "exception" to this rule: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred. [Citations.]" (*Id.*, at p. 620.)

Later cases make it clear, however, that the so-called "third party tort exception" to the rule that parties bear their own attorney fees is not really an "exception" at all but an application of the usual measure of tort damages. The theory of recovery is that the attorney fees are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action. In such cases there is no recovery of attorney fees qua attorney fees. (*Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 817-818 [210 Cal.Rptr. 211, 693 P.2d 796].) Indeed, this point was made clear in *Prentice* itself when the court stated it was "not dealing with 'the measure and mode of compensation of attorneys' but with damages wrongfully caused by the defendant's improper actions." (*Prentice, supra*, 59 Cal.2d at p. 621.)

Because the third party tort "exception" is in fact an element of tort damages, nearly all of the cases which have applied the doctrine involve a clear violation of a traditional tort duty between the tortfeasor who is required to pay the attorney fees and the person seeking compensation for those fees. (See, e.g., *Brandt* v. *Superior Court, supra*, 37 Cal.3d at pp. 815-820 [breach of insurer's duty of good faith and fair dealing to insured]; *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 502, 507-508 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763] [breach of fiduciary duty between real estate broker and buyer]; *Prentice* v. *North American Title, supra*, 59 Cal.2d at pp. 619-621 [breach of escrow agent's duty of due care to seller]; *Heckert* v. *MacDonald* (1989) 208 Cal.App.3d 832, 834-835, 837-838 [256 Cal.Rptr. 369] [breach of fiduciary duty between real estate broker and seller]; *Slaughter* v. *Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1243, 1249-1252 [209 Cal.Rptr. 189] [negligent infliction of emotional distress]; *Vanguard Recording Society, Inc.* v. *Fantasy Records, Inc.* (1972) 24 Cal.App.3d 410, 413-414, 419 [Fantasy Records interfered with exclusive recording contract between Joan Baez and Vanguard by releasing bootleg recording; Baez and Vanguard permitted to recover attorney fees incurred by them in bringing injunctive actions against parties

other than Fantasy in order to prevent the distribution and sale of Fantasy's record].)

Sooy, however, relies on two cases where it is less clear that the person required to pay the attorney fees committed a tort vis-à-vis the person receiving that compensation. He contends that these cases establish that the *Prentice* "exception" applies even when there is no violation of a tort duty between those two parties.

In the first case, *Lang* v. *Klinger* (1973) 34 Cal.App.3d 987 [110 Cal.Rptr. 532], a title insurer established an escrow for the sale of a home. The title company negligently failed to discover that two abstracts of judgment had been recorded against the property, and it closed the sale and issued a title insurance policy without listing the abstracts as an exception to coverage. After the sale closed, the judgment creditors attempted to satisfy the judgment by conducting an execution sale of the property. The purchasers, however, sought and obtained an injunction preventing the judgment creditors from proceeding with the sale. The Court of Appeal reversed the injunction and permitted the execution sale to proceed. More importantly, the Court of Appeal required the title company to compensate the judgment creditors for attorney fees they incurred in defending the purchasers' action to enjoin the sale. Citing *Prentice,* the *Lang* court reasoned: "The primary fault in the present case was that of negligence on the part of the title insurance company which brought about the deeding to the [purchasers], purportedly by title clear except for other described encumbrances. But the insurer then attempted to escape whatever loss would have to be paid to the [purchasers] by an execution sale pursuant to the [abstracts of] judgment, by filing the complaint for injunction against the sale, using [the purchaser's] name by agreement. [¶] Thus, although [the judgment creditors] were not parties to the escrow, they were injured by the attempted transfer to them of loss from the insureds, and they were compelled to become obligated for attorney's fees and expenses. These are recoverable in the same action, the one brought, actually though not in name, by the title company." (34 Cal.App.3d at p. 993.)

*Lang* was followed in *Manning* v. *Sifford* (1980) 111 Cal.App.3d 7 [168 Cal.Rptr. 387]. In *Manning,* real estate brokers sold a parcel of land to the DeGraws. During the sale, the brokers confirmed the existence of an access easement across the property of another, and it was described in the deed of conveyance. Shortly after the sale closed, the owner of the land subject to the easement (Sifford) blocked the easement and denied the DeGraws vehicular access to their property. The DeGraws sued Sifford to quiet title and also sued the brokers for damages resulting from alleged misrepresentations concerning the easement. The brokers cross-complained against Sifford for

their attorney fees and other costs of litigation asserting that they were foreseeable consequences of Sifford's wrongful interference with the easement. The trial court quieted title to the easement in favor of the DeGraws but denied relief on the brokers' cross-complaint for attorney fees. The Court of Appeal reversed on the attorney fees issue, specifically rejecting Sifford's argument that since Sifford owed no "duty" to brokers, a wrongful act was not committed against them, thus relieving Sifford of any liability for their attorney fees. (*Id.*, at pp. 9-10.) The *Manning* court found that "although Sifford's wrongful conduct was not directed against brokers, it was done intentionally and apparently with knowledge that it was unjustified. Moreover, we fail to find it unforeseeable that the interference with the DeGraws' easement would cause them to sue the realtors for misrepresentations concerning the existence of the easement. The DeGraws' action against third parties was a 'natural and proximate consequence' of Sifford's activities. (See *Prentice v. North Amer. Title Guar. Corp., supra*, 59 Cal.2d at p. 621.)" (*Manning, supra*, 111 Cal.App.3d at p. 11, fn. omitted.) In a concurring and dissenting opinion to the *Manning* majority, Justice Blease observed: " The majority opinion first suggests a basis in tort for the recovery by the real estate brokers of attorney's fees for having been compelled to defend themselves in an action brought by their principal as a consequence of the wrongful interference with the principal's rights by Sifford. The majority opinion states that the action against the brokers was a ' "natural and proximate consequence" of Sifford's activities.' It then inexplicably extends *Prentice* . . . to permit recovery of attorney's fees other than as damages in a tort action. I concur in the suggestion and dissent from the extension." (*Manning, supra*, 111 Cal.App.3d at p. 13, conc. and dis. opn. of Blease, J.)

Like the concurring justice in *Manning*, we are concerned by the *Lang* and *Manning* courts' suggestion that attorney fees are recoverable under *Prentice* other than as damages in a tort action. In our view, *Prentice* merely holds that necessary attorney fees incurred in third party litigation which is proximately and foreseeably caused by a tortfeasor are recoverable as damages in an action against the tortfeasor. (*Brandt, supra*, 37 Cal.3d at p. 818.) This is not to say that the results in *Lang* and *Manning* are necessarily incorrect. In each case, the compensated parties were arguably forseeable victims of the compensating parties' wrongful conduct, and consequently the compensating parties may indeed have violated some tort duty (although not necessarily a duty of due care) owed to the compensated parties. (See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts § 6, p. 61.) ■ However, we do not believe that the facts pleaded in the present case establish a violation of any tort duty between Peter and Sooy.

In analyzing the *Prentice* issue in this case, it is important to note that Sooy's cross-complaint alleges only that Peter acted *negligently* when he

failed to keep himself informed of the bankruptcy proceedings, and that this failure caused the Whiteheads to miss the foreclosure sale, and ultimately caused them to file suit against Sooy. The cross-complaint does *not* allege that Peter falsely told his clients that Sooy had promised to provide the notice. Consequently, we are concerned here only with the scope of Peter's duty as it relates to his alleged professional negligence.[4]

In general, an attorney is not liable to a nonclient for the consequences of professional negligence. (*Fox* v. *Pollack* (1986) 181 Cal.App.3d 954, 960 [226 Cal.Rptr. 532].) In certain circumstances, however, liability has been extended to nonclients who are *intended beneficiaries* of the attorney's services. (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 233, pp. 262-263; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685] [beneficiaries under will]; *Morales* v. *Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307, 316 [160 Cal.Rptr. 239] [beneficiaries of trust]; *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136 [65 Cal.Rptr. 406, 28 A.L.R.3d 368] [attorney hired to represent third party].)

On the other hand, the courts have consistently found that an attorney has no duty of due care to protect the interests of an adverse party (*Schick* v. *Lerner* (1987) 193 Cal.App.3d 1321, 1330 [238 Cal.Rptr. 902]; *Norton* v. *Hines* (1975) 49 Cal.App.3d 917, 921 [123 Cal.Rptr. 237]) nor of a party with whom the client dealt at arm's-length (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737]).

In the present case, it is absolutely clear that Sooy—who represented a potentially adverse party in the foreclosure—was not an intended beneficiary of Peter's services. At best, Sooy represented a client who was dealing at arm's-length with Peter's client. In *Goodman* v. *Kennedy, supra,* the Supreme Court resolved "the legal question of whether or under what circumstances an attorney's duty of care in giving legal advice to a client extends to persons with whom the client in acting upon the advice deals wholly at arm's length. . . . [Attorneys have] no such duty in the absence of any showing that the legal advice was foreseeably transmitted to or relied upon by [the nonclients] or that [the nonclients] were intended beneficiaries of a transaction to which the advice pertained." (18 Cal.3d at p. 339; *Fox* v. *Pollack, supra,* 181 Cal.App.3d at p. 961.) Here, there is absolutely no allegation that any advice given by Peter was transmitted to

---

[4] We emphasize that we are referring to duty as an element of ordinary negligence, and not a duty based on fraud, conspiracy, or intentional torts. As indicated, Sooy has not alleged that Peter lied to his clients in an effort to shift liability from himself to Sooy. Significantly, Peter is *not* representing the Whiteheads in their suit against Sooy, and consequently was not directly responsible for drawing the allegations in the complaint.

and relied upon by Sooy or that Sooy was an intended beneficiary of any transaction to which the advice pertained.

■ We are aware that the question whether an attorney owes a duty of care to a third person is one of law and in each case involves "a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. [Citations.]"[5] *(Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 342; *Schick* v. *Lerner, supra,* 193 Cal.App.3d at p. 1329.) However, in light of the closely analogous authorities cited above, we do not believe an extensive analysis of those policy considerations is necessary. ■ In our view, it is clear that Peter's professional duty of due care did not extend to Sooy, who was the attorney of a third party in what was at best an arm's-length transaction, and at worst an adversarial proceeding.

Since Peter owed no duty of due care to Sooy, there is no basis for awarding attorney fees as damages under *Prentice.*

The judgment is affirmed. Costs on appeal are awarded to respondent.

Merrill, J., and Strankman, J., concurred.

---

[5] In particular, "the determination whether in a specific case the [attorney] will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the [attorney's] conduct and the injury, and the policy of preventing future harm. [Citation.]" *(Lucas* v. *Hamm, supra,* 56 Cal.2d at p. 588; *Schick* v. *Lerner, supra,* 193 Cal.App.3d at p. 1330.)